■ In the Matter of COUNTY OF ST. LAWRENCE, Respondent, v NIRAV R. SHAH, as Commissioner of Health, et al., Appellants. [945 NYS2d 443]—

Kavanagh, J. Appeal from a judgment of the Supreme Court (Demarest, J.), entered August 22, 2011 in St. Lawrence County, which granted petitioner's application, in a proceeding pursuant to CPLR article 78, to annul a determination of respondent Commissioner of Health disallowing petitioner's claims for Medicaid reimbursements.

As of December 2010, petitioner had submitted three claims to respondent Department of Health (hereinafter DOH) seeking reimbursement for certain payments, known as overburden expenditures, that it made to the state for Medicaid services provided to certain mentally disabled recipients (*see* Social Services Law § 368-a [1] [h]; *Matter of Spano v Novello*, 13 AD3d 1006, 1007-1008 [2004], *lv denied* 4 NY3d 819 [2005]). DOH rejected each of these claims because it interpreted a 2010 amendment to the Medicaid Cap Statute (*see* L 2005, ch 58, § 1,

---

* Plaintiff's counsel conceded this point at oral argument.

part C, as amended by L 2006, ch 57, § 1, part A, § 60) as repealing Social Services Law § 368-a (1) (h) and thereby relieving it of the obligation to reimburse petitioner for these overburden expenditures (*see* L 2010, ch 109, § 1, part B, § 24). In response to this determination, petitioner commenced this CPLR article 78 proceeding seeking payment of these claims, all of which accrued prior to January 1, 2006 and totaled $28,716. Supreme Court granted the petition and ordered respondents to reimburse petitioner for these expenditures, and this appeal by respondents ensued.

Medicaid is a government-funded health program that provides medical services to individuals with low incomes and limited resources (*see Matter of Nazareth Home of the Franciscan Sisters v Novello*, 7 NY3d 538, 542 [2006]). In New York, it is administered by DOH and is funded by subsidies received from federal, state and local governments (*see* Social Services Law § 368-a [1] [d]). By 1982, the expense born by counties in New York for their share of the cost of Medicaid had significantly increased due, in part, to the deinstitutionalization of certain mentally disabled persons and the medical services they required upon being relocated in the community (*see Matter of Krauskopf v Perales*, 139 AD2d 147, 148 [1988], *affd* 74 NY2d 730 [1989]). Recognizing that counties needed financial assistance to meet this obligation, the Legislature enacted the Human Service Overburden Law in 1982, thus spawning the term overburden expenditures. This statute made the state fully responsible for each county's share of Medicaid expenditures incurred in providing medical services to these mentally disabled recipients and required the state to reimburse the county for any payments it made for these overburden expenditures (*see* Social Services Law § 368-a [1] [h]). It is this obligation imposed on the state by this statute—the full payment of the nonfederal share of medical services provided to certain mentally disabled individuals—and how it has been affected by a 2010 amendment to the Medicaid Cap Statute that is at issue in this proceeding (*see* L 2010, ch 109, § 1, part B, § 24).

In 2006, the Medicaid Cap Statute was enacted for the singular purpose of providing counties with relief from the financial burdens imposed upon them by Medicaid. Before the Medicaid Cap Statute was enacted, the federal government paid 50% of the medical costs incurred under Medicaid, while the state and counties, as a general rule, each paid a 25% share of these expenses. The Medicaid Cap Statute altered this funding formula by, in effect, limiting each county's liability to the net Medicaid expenditures it made in 2005 with adjustments for in-

flation and other so-called trend factors (*see* L 2005, ch 58, § 1, part C, § 1).[1] After the cap went into effect, the state took the position that it was no longer obligated to reimburse counties for overburden expenditures incurred prior to January 1, 2006. Petitioner, and others, challenged the denial of these claims in CPLR article 78 proceedings, and numerous courts declared that the state was still obligated to reimburse the counties for these expenditures that occurred prior to January 1, 2006, or before the effective date of the Medicaid Cap Statute[2] (*see Matter of County of St. Lawrence v Daines*, 81 AD3d 212, 214-215 [2011], *lv denied* 17 NY3d 703 [2011]; *Matter of County of Herkimer v Daines*, 60 AD3d 1456, 1457 [2009], *lv denied* 13 NY3d 707 [2009]; *Matter of County of Niagara v Daines*, 60 AD3d 1460, 1461 [2009], *lv denied* 13 NY3d 708 [2009]).

While litigation was pending, the Legislature, in 2010, amended the Medicaid Cap Statute to provide that "the state/local social services district relative percentages of the non-federal share of medical assistance expenditures incurred prior to January 1, 2006 shall not be subject to adjustment on and after July 1, 2006" (L 2010, ch 109, § 1, part B, §§ 24, 40).[3] In effect, this amendment locked in a county's percentage share for the cost of Medicaid services at the figure calculated under the cap and prohibited any adjustment in that percentage after July 1, 2006.[4] After this amendment took effect, respondents once again claimed that the state was no longer required to reimburse counties for these overburden expenditures because such a refund would result in an alteration of each county's "percentage of the non-federal share" for Medicaid expenditures made prior to January 1, 2006 in violation of this statute. Distilled to its essence, respondents' claim is that if a county was given a refund for these expenditures, it would, in effect, have paid less for Medicaid prior to January 1, 2006 and its

---

**1.** The trend factors are 3.5% in 2006, 3.25% in 2007 and 3% each year thereafter, all to be calculated based upon the counties' net medical expenditures for 2005.

**2.** The state subsequently paid more then $6 million to satisfy these claims.

**3.** Social Services Law § 61 provides that "[f]or the purpose of administration of public assistance and care the state shall be divided into county and city social services districts as follows: 1. The city of New York is hereby constituted a city social services district. 2. Each of the counties of the state not included in subdivision one of this section is hereby constituted a county social services district" (*see* Social Services Law § 2 [7]).

**4.** July 1, 2006 was selected as the date after which the adjustment could not be made because the Medicaid Cap Statute did not require DOH to determine a county's 2005 base-year Medicaid expenditure until June 30, 2006 (*see* L 2005, ch 58, § 1, part C, as amended by L 2006, ch 57, § 1, part A, § 60).

Medicaid liability as calculated under the cap would thereby be reduced. For reasons that follow, we do not agree, and affirm the judgment of Supreme Court requiring respondents to reimburse petitioner for overburden expenditures that it incurred prior to January 1, 2006.

We begin by noting, as respondents concede, that the 2010 amendment—and its legislative history—make no reference to the state's obligation to reimburse counties for overburden expenditures that accrued prior to January 1, 2006 or the court decisions declaring that this obligation was not altered or affected by the Medicaid Cap Statute. Moreover, the amendment, by its terms, does not explicitly repeal Social Services Law § 368-a (1) (h) or the regulations promulgated by DOH to implement it (see 18 NYCRR 601.1 et seq.). In the absence of such a clear and unequivocal indication by the Legislature that it intended to repeal Social Services Law § 368-a (1) (h), respondents argue that the 2010 amendment, by implication, effectively invalidated that statute and relieved the state of the obligation to pay overburden expenditures because it prohibits, after July 1, 2006, any adjustment of the percentage share of what a county pays for Medicaid under the cap.

Initially, we note that "[r]epeal by implication is distinctly not favored in the law[,]" and a court "should not lightly infer that the Legislature has repealed one if its own enactments when it has failed to do so expressly" (Alweis v Evans, 69 NY2d 199, 204 [1987]). Here, respondents have presented no rationale for why the Legislature, if it intended to repeal Social Services Law § 368-a (1) (h) and relieve the state of the underlying obligation, did not do so explicitly either in the 2010 amendment or in the legislative history that preceded its enactment. The fact that the Legislature did not speak to this issue is, in our view, made even more telling given the financial implications that would necessarily result from such a finding. All agree that much more is at stake in this proceeding than the $28,716 sought by petitioner in its petition. As respondents' expert acknowledged, if all the counties and social service districts in this state submitted "such reimbursement claims, the total amount of reimbursement would dwarf the amount . . . claimed to date." In our view, it makes no sense that the Legislature would enact such an amendment intending to repeal an existing statute knowing that to do so would have profound financial consequences for all involved and not announce that intention at some point in the legislative process.

We also reject respondents' position that the 2010 amendment and Social Services Law § 368-a (1) (h) as they relate to

overburden expenditures are inherently inconsistent and cannot coexist with each other. In that regard, "a statute is not deemed impliedly modified by a later enactment 'unless the two are in such conflict that both cannot be given effect. If by any fair construction, a reasonable field of operation can be found for [both] statutes, that construction should be adopted' " (*Matter of Consolidated Edison Co. of N.Y. v Department of Envtl. Conservation*, 71 NY2d 186, 195 [1988], quoting *People v Newman*, 32 NY2d 379, 390 [1973], *cert denied* 414 US 1163 [1974]; *accord Matter of Independence Party State Comm. v New York State Bd. of Elections*, 297 AD2d 459, 461 [2002]). This is especially true in cases involving statutes relating to the same subject matter, as these must be " 'read together and applied harmoniously and consistently' " (*Matter of Independence Party State Comm. v New York State Bd. of Elections*, 297 AD2d at 461, quoting *Alweis v Evans*, 69 NY2d at 204; *see Matter of M.B.*, 6 NY3d 437, 447 [2006]). Here, as petitioner argues, and Supreme Court agreed, the two provisions—Social Services Law § 368-a and the 2010 amendment—as they relate to the state's obligation to reimburse counties for these expenditures are compatible and can be interpreted to achieve legislative objectives that are not inherently inconsistent with each other. Specifically, the 2010 amendment can be read to bar reimbursement for overburden expenditures that accrued *after* January 1, 2006—or the first date that counties operated under the cap— while Social Services Law § 368-a can be interpreted as requiring the state to reimburse petitioner for any such expenditures that accrued *prior* to that date (*see Matter of County of St. Lawrence v Daines*, 81 AD3d at 215).

As for respondents' contention that their interpretation of this amendment is entitled to deference, we note that the phrase "relative percentages of the non-federal share of medical assistance expenditures incurred prior to January 1, 2006" is not a highly technical term or a concept that implicates respondents' operating practices or procedures. Instead, it refers to what petitioner and the state paid for Medicaid expenditures prior to January 1, 2006 and, as applied to the issues raised in this proceeding, involves a question of "pure statutory reading and analysis" for which deference is not required (*Matter of Belmonte v Snashall*, 2 NY3d 560, 566 [2004]). Moreover, the affidavit submitted by respondents interpreting the 2010 amendment and its impact on the state's obligation to pay these overburden expenditures was prepared long after the amendment was enacted and is not supported by any relevant legislative history as to the conclusions contained therein (*see Matter of County of Niagara v Daines*, 91 AD3d 1288, 1290 [2012]).

We also note that respondents' argument challenging the continued validity of Social Services Law § 368-a (1) (h) as it applies to overburden expenditures is dependent entirely upon a finding that, if the state is required to reimburse petitioner for these expenditures, the percentage calculation of petitioner's Medicaid obligation under the cap would necessarily be affected. However, the cap calculation is based on what a county's net Medicaid expenditures were in 2005. A refund made years later does not alter that baseline computation or change what the counties paid for these expenditures prior to January 1, 2006. In addition, the 2010 amendment, by its terms, allows the state to recoup from a county certain expenditures for Medicaid that were subsequently disallowed by the federal government because of the county's failure to properly administer the program (see L 2010, ch 109, § 1, part B). This "clawback provision" bars respondents from using these payments obtained from the counties to recalculate a county's net Medicaid expenditures made prior to January 1, 2006 and thus compel an increase in a county's Medicaid liability under the cap. Locking in a county's percentage share of what it pays for medical expenses covered by Medicaid—and not allowing any adjustment that would ultimately affect what it owes for Medicaid under the cap—serves an important purpose; it provides counties with some finality in terms of their annual Medicaid liability and, at the same time, assists each county in making accurate financial projections in the budgetary process (see Senate Introducer's Mem in Support, Bill Jacket, L 2010, ch 109, at 8). For the same reason, the 2010 amendment bars any adjustment of this percentage when a county receives reimbursement for overburden expenditures made prior to January 1, 2006. In that circumstance, the 2010 amendment prevents a county from claiming that the reimbursement of these expenditures has reduced what the county paid for Medicaid in 2005, thus reducing its liability under the cap.

Finally, since 1982, it has been the state's statutory obligation to pay the county share for Medicaid expenditures incurred in providing medical services to certain mentally disabled individuals. While the state, and not the county, has been obligated to pay for these medical services, it has continued to charge petitioner for these expenses and used these funds to satisfy its obligations under this statute. Since the state was never entitled to these funds, the 2010 amendment, even if found to apply to overburden expenditures, cannot serve to transform these county funds into state property and relieve the state of the legal obligation to return them. General Construction Law § 93 provides that "[t]he repeal of a statute or part thereof shall not

affect or impair any . . . right accruing, accrued or acquired, or liability . . . incurred prior to the time such repeal takes effect, but the same may be enjoyed, asserted, [or] enforced . . . as fully and to the same extent as if such repeal had not been effected." This Court has previously held that "prior to 2006, upon payment to DOH for services provided to overburden patients for which no local share was owing, petitioner's right to reimbursement for such expenditures accrued" (*Matter of County of St. Lawrence v Daines*, 81 AD3d at 216). Thus, the 2010 amendment, even if it was intended by the Legislature to repeal Social Services Law § 368-a (1) (h), cannot serve to relieve the state of its obligation to refund the counties for these expenditures made prior to January 1, 2006 (*see Matter of County of Niagara v Daines*, 91 AD3d at 1290).

Rose, J.P., Spain, Malone Jr. and McCarthy, JJ., concur. Ordered that the judgment is affirmed, without costs.