This opinion is uncorrected and subject to revision before publication in the New York Reports.

--------------------------------------------------------------------

No. 136
In the Matter of County of Chemung,

    Respondent,

   v.

Nirav R. Shah, &c., et al.,

    Appellants.

--------------------------------

No. 137
In the Matter of County of St. Lawrence,

    Respondent,

   v.

Nirav R. Shah, &c., et al.,

    Appellants.

(And Two Other Related Proceedings.)

--------------------------------

No. 138
In the Matter of County of Chautauqua,

    Appellant,

   v.

Nirav R. Shah, &c., et al.,

    Respondents.

--------------------------------

No. 139
In the Matter of County of Jefferson,

    Appellant,

   v.

Nirav R. Shah, &c., et al.,

    Respondents.

--------------------------------

No. 140
In the Matter of County of Oneida,

    Appellant,

   v.

Nirav R. Shah, &c., et al.,

    Respondents.

--------------------------------

No. 141
In the Matter of County of
Genesee,
   Appellant,
  v.
Nirav R. Shah, &c., et al.,
   Respondents.
--------------------------
No. 142
In the Matter of County of
Cayuga,
   Appellant,
  v.
Nirav R. Shah, &c., et al.,
   Respondents.

--------------------------
No. 143
In the Matter of County of
Monroe,
   Appellant,
  v.
Nirav R. Shah, &c., et al.,
   Respondents.
Case Nos. 136 and 137:
  Victor Paladino, for appellants.
  Christopher E. Buckey, for respondent.
  City of New York; New York State Association of
Counties, amici curiae.


Case Nos. 138, 139, 140, 141, 142 and 143:
  Christopher E. Buckey, for appellant.
  Victor Paladino, for respondents.
  City of New York; New York State Association of
Counties, amici curiae.




RIVERA, J.:

   In these appeals, several counties challenge the
constitutionality of Section 61 of the 2012 amendment (L 2012, ch
56 § 1, part D, § 61) to the Medicaid Cap Statute (L 2005, ch 58,
§ 1, part C, § 1), which closes the door on reimbursement claims
for a category of Medicaid disability expenses paid by the

- 1 -

counties to the State prior to 2006.  The current appeals are the latest round in a decade-long struggle between the counties and the State, during which the counties demanded payment after the State Legislature restructured the Medicaid local-share payment system, and enacted a flat cap on total county Medicaid expenses. We are now faced with divergent departmental approaches to the resolution of the singular question underlying these proceedings: whether the State must consider and pay claims submitted after the effective date of the legislative deadline for pre-2006 reimbursement claims set forth in Section 61.  We conclude Section 61 is constitutional, and that the State is under no further obligation to address outstanding county reimbursement claims filed after April 1, 2012, nor must the State initiate an administrative review of its records to identify and pay for any pre-2006 claims.

I.

Medicaid is a federal program that provides medical services to low-income individuals with limited resources (see generally Visiting Nurse Serv. of NY Home Care v NY State Dept. of Health, 5 NY3d 499, 503 [2005]; 42 USC § 1395 et seq.).  The program is jointly funded by the federal government and the states (42 USC §§ 1396a, 1396b).  In New York, the program is administered through the State Department of Health (DOH), and the State pays for covered medical services and, in turn, is partially reimbursed a specified percentage for these expenses by

the federal government (id.). Unreimbursed expenses are shared between the State and fifty-eight local social services districts, which are coterminous with the State's counties (Social Services Law § 368-a [1] [d]).[1]

From 1984 until 2006 the State directly billed the counties for their respective local shares, which included costs for a category of medical services for certain Medicaid recipients for which the counties bore no financial responsibility, and for which they were entitled to repayment, known as "overburden reimbursements" (Social Services Law § 368-a [1] [h]). The State deposited the local share in a special escrow Medicaid fund maintained by the State Comptroller (Social Services Law § 367-b [14]). As required by Social Services Law § 368-a (1) (h) (i), upon review by DOH of the local share, the State was obligated to pay the county 100 percent of Medicaid services provided to recipients who were eligible for overburden reimbursement.[2]

---

[1] The exception is New York City, whose five counties are constituted as a single social service district (Social Services Law § 61).

[2] The Department of Health (DOH): "shall review the expenditures made by social services districts for medical assistance for needy persons, and the administration thereof, before making reimbursement . . . . If approved by the [DOH], such expenditures . . . shall be subject to reimbursement by the state in accordance with this section and the regulations of the [DOH] as follows: (h)(i) Beginning January first, 1984, one hundred per centum of the amount expended for medical assistance for those individuals who are eligible . . . as a result of a mental disability as determined by [state officials] after first

From 1984 to 2005, the State met its obligation to pay overburden reimbursements in two ways. First, DOH identified overburden reimbursement-eligible patients and paid the counties quarterly. Second, DOH instituted a process whereby counties could submit reimbursement claims for eligible patients overlooked by DOH (18 NYCRR 601.4 & part 635). To assist with the claims process, DOH would send each county several reports that included the client identification number of each patient for which the county was entitled to reimbursement, the amount the county had originally paid for that patient's Medicaid expenditures, and the reimbursement amount. The State also made the adjudicated claims history file available to the counties, and it included details from 1984 onward regarding all Medicaid claims that DOH's fiscal agent paid for services provided to Medicaid recipients. Any county that believed it was owed a reimbursement based on its review of these reports could notify DOH in writing by letter or upon submission of a claim in accordance with DOH regulations.

In response to rising Medicaid costs and the fiscal burdens they imposed on the counties, in 2006 the Legislature enacted the Medicaid Cap Statute (Cap Statute) to limit the counties' financial responsibility for Medicaid expenditures. The Cap Statute replaced the counties' fixed percentage of

---

deducting therefrom any federal funds properly received or to be received on account thereof" (Social Services Law § 368-a [1] [h] [i]).

Medicaid expenses (for example, roughly 25%), with a maximum individualized county cap, based on the Medicaid expenditures made by or on behalf of each county during the 2005 base year, after deducting any overburden reimbursement payments made to the county.

Thereafter, DOH interpreted the Cap Statute as imposing a specific annual contribution amount on the counties that they could not reduce by seeking payment for outstanding overburden reimbursements, and DOH denied overburden reimbursement claims submitted after the enactment of the Cap Statute. Niagara, Herkimer, and St. Lawrence Counties each brought article 78 proceedings challenging the denials. Supreme Court granted the Counties partial relief and, when DOH appealed, the Appellate Division held that DOH's application of the Medicaid Cap Statute to the Counties' claims "constituted an impermissible retroactive application of the statute" (County of St. Lawrence v Daines, 81 AD3d 212, 214 [3d Dept 2011], lv denied 17 NY3d 703 [2009]; see also County of Herkimer v Daines, 60 AD3d 1456, 1457 [4th Dept 2009], lv denied 13 NY3d 707 [2009]; County of Niagara v Daines, 60 AD3d 1460, 1461 [4th Dept 2009], lv denied 13 NY3d 708 [2009]).

On the heels of the Counties' success in the courts, the Legislature enacted an amendment in 2010 that DOH interpreted as barring the Counties from seeking past overburden reimbursements. Another round of litigation ensued, and the

Appellate Division ultimately rejected the State's statutory construction and annulled DOH's denials of overburden claims, concluding that the 2010 amendment did not clearly and unambiguously extinguish the State's obligation to pay the pre-2006 claims (see County of St. Lawrence v Shah, 95 AD3d 1548, 1548 [3d Dept 2012]; County of Niagara v Daines, 91 AD3d 1288, 1290 [4th Dept 2012], lv denied 94 AD3d 1481 [2009]).

While these appeals were pending, the Legislature enacted Section 61 of the 2012 Executive Budget Law (Section 61), which expressly provides that "[n]otwithstanding the provisions of section 368-a of the social services law or any other contrary provision of law, no reimbursement shall be made for social services districts' claims submitted on and after the effective date of this paragraph, for district expenditures incurred prior to January 1, 2006" (L 2012, ch 56, § 1, part D, § 61).  Section 61, which was proposed on January 17, 2012 and passed on March 30, 2012, had an effective date of April 1, 2012.  According to the State Executive Budget Memorandum, Section 61 was intended:

> "to clarify that local governments cannot claim for overburden expenses incurred prior to January 1, 2006 when the 'local cap' statute that limited local contributions to Medicaid expenditures took effect. This is necessary to address adverse court decisions that have resulted in State costs paid to local districts for pre-cap periods, which conflict with the original intent of the local cap statute."

(Mem in Support of 2012-13 NY Executive Budget, Health and Mental Hygiene art VII Legis, at 18 [2012]).  When the 2012 Amendment

was passed, overburden claims could be up to twenty-eight years old.

Shortly before the April 1st effective date, St. Lawrence and Chemung Counties submitted claims for millions of dollars of pre-2006 overburden reimbursements.  DOH paid these claims in 2012 but rejected claims from several upstate Counties, including additional claims from St. Lawrence and Chemung Counties submitted after April 1, 2012.

St. Lawrence County commenced three combined CPLR article 78 proceedings and actions for declaratory judgment (for each claim rejected by DOH). The County sought to annul DOH's decision to deny reimbursement for claims submitted after April 1, 2012 as arbitrary and capricious and to compel DOH to approve and pay the claims.  It further requested that the court declare Section 61 unconstitutional for depriving the County of its vested property rights, and impose a constructive trust over the funds that DOH was allegedly obligated to reimburse.  DOH moved and the County cross-moved for summary judgment on the declaratory judgment and state law claim.  Supreme Court concluded that the County had a vested right to reimbursement for the overburden expenditures which could not be extinguished.  It declared Section 61 unconstitutional, annulled DOH's denials of the County's claims, and directed DOH to pay the claims submitted by the County (Matter of St. Lawrence v Shah, Sup Ct, St Lawrence County, July 31, 2013, Demarest, J., index No 140712).  Supreme

Court also granted the County's request for mandamus relief and held that DOH has a unilateral obligation to calculate and reimburse the County for the pre-2006 overburden expenditures.

The Third Department modified Supreme Court's order, and held Section 61 constitutional, construing it as a statute of limitations that did not extinguish the Counties' substantive rights but merely ended the time for submission of their claims. As a matter of procedural due process, the Court imposed a six-month grace period from the date of its decision for submission of the Counties' pre-2006 claims (County of St. Lawrence v Shah, 124 AD3d 88, 92-93 [3d Dept 2014]). The court also upheld the grant of mandamus relief, which required DOH to identify, verify and pay all overburden expenditures incurred by the County before 2006 (id. at 94).

In the summer of 2013, Chemung County commenced a combined CPLR article 78 proceeding and action for declaratory judgment seeking similar relief to that sought in the St. Lawrence litigation. Supreme Court held in Chemung County's favor on the reasoning of the decision in the St. Lawrence proceedings. On appeal, the Third Department applied its St. Lawrence decision and reached the same conclusion (County of Chemung v Shah, 124 AD3d 963 [3d Dept 2015]).

Shortly before the decision in St. Lawrence, the Fourth Department held in an article 78 proceeding and declaratory judgment action commenced by Niagara County, that Section 61

applies retroactively to extinguish the pre-2006 overburden claims.  However, the court remitted for consideration of any properly alleged State challenges to the County's argument that Section 61 violated due process by extinguishing its vested rights in the claims (County of Niagara v Shah, 122 AD3d 1240 [4th Dept 2014]).

Before a decision was rendered on that issue in the Niagara County litigation, and in nearly identical actions commenced by Chautauqua County and Jefferson County, the Fourth Department held that the State waived its defense that the Counties' lacked capacity to assert constitutional challenges against the State and State legislation.  However, the court determined that the Counties were not persons within the meaning of the due process clauses of the federal and state constitutions, and therefore failed to establish the unconstitutionality of Section 61 (County of Chautauqua v Shah, 126 AD3d 1317 [4th Dept 2015]; County of Jefferson v Shah, 126 AD3d 1322 [4th Dept 2015]; County of Oneida v Shah, 128 AD3d 1381 [4th Dept 2015]; County of Genesee v Shah 128 AD3d 1380 [4th Dept 2015]; County of Cayuga v Shah, 129 AD3d 1503 [4th Dept 2015]; County of Monroe v Shah, 129 AD3d 1505 [4th Dept 2015]).  Those Counties appealed to this Court.

We granted the State leave to appeal in County of Chemung v Shah (124 AD3d 963 [3d Dept 2015]) and County of St. Lawrence (124 AD3d 88 [93d Dept 2014]) to resolve the divergence

and apparent conflict in the Appellate Division (County of Chemung v Shah, 25 NY3d 903 [2015]; County of St. Lawrence v Shah, 25 NY3d 903 [2015]).

## II.

On appeal to us, the Counties assert that they possess constitutionally protected vested rights in the unpaid funds which cannot be extinguished by retroactive application of Section 61 without violating their due process rights. Under this interpretation of the statutory scheme, the Counties have no burden to demand payment and the State must pay any overburden reimbursements due under Social Services Law § 368-a (1) (h) (i), regardless of whether the Counties submitted claims before April 1, 2012, or at any time thereafter. This would mean that the State has an ongoing obligation, terminated only by payment of outstanding reimbursements, irrespective of the age of the claim.

Alternatively, the Counties argue Section 61 may be interpreted to avoid any constitutional deficiencies as a statute of limitations that sets a deadline for the submission of claims without extinguishing the Counties' substantive rights, but that the deadline set forth in Section 61 must be extended to provide an adequate period in which to submit their remaining claims. Lastly, the Counties argue that mandamus relief is not only appropriate but necessary to compel the State's compliance with its statutory duty under Social Services Law § 368-a.

The State responds that the Counties fail to present a

viable due process challenge to the constitutionality of Section 61. The State argues the Counties are neither "persons" guaranteed due process in the constitutional sense, nor are they holders of any rights in a particular form of medicaid allocation. Regardless, according to the State, the Counties have not been unfairly harmed by its decision to replace one Medicaid expense repayment system with another because the Cap Statute provides greater financial benefits to the counties. The State maintains that the legislature responded to the rapidly increasing Medicaid costs with a ceiling on the counties' financial exposure, essentially providing them with a fixed dollar amount rather than a fixed percentage of overall costs. Under the Cap Statute, the total amount the counties could pay was limited, but part of this legislative "deal" was that the counties would be required to pay their full cap amount each year, without any credit for reimbursements owed. The State also claims that the Counties lack a clear legal right to the mandamus relief granted here, specifically a massive, retrospective review by the State of twenty-two years of Medicaid expenditures.

The litigation posture of these appeals presents insurmountable obstacles to our consideration of some of the State's objections to the Counties' ability to pursue its challenge to Section 61. As the State concedes, it waived any argument that the Counties are without capacity to sue the State under the general rule that municipalities are "creatures or

agents of the State," without authority to "contest the actions of their principal or creator affecting them in their governmental capacity or as representatives of their inhabitants" (City of NY v State of NY, 86 NY2d 286, 290 [1995]; see also Williams v Mayor, 289 US 36, 40 [1933]).  The State's waiver encompasses any challenge to the Counties' argument that they hold a proprietary interest in the overburden reimbursements (see City of NY, 86 NY2d at 291-292).  The State also failed to preserve its argument that the Counties lack a substantive due process right to the monies they now claim because the municipalities are not persons within the meaning of the federal and state due process clauses.

We now turn to the merits of the Counties' challenge to the State's interpretation of Section 61.  Five principles guide our analysis.  First, "[i]t is well settled that acts of the Legislature are entitled to a strong presumption of constitutionality" (Cohen v Cuomo, 19 NY3d 196, 201 [2012]). This presumption can only be overcome when it can be shown beyond a reasonable doubt that it conflicts with a fundamental law, and "until every reasonable mode of reconciliation of the statute with the constitution has been resorted to, and reconciliation has been found impossible" (In re Fay, 291 NY 198, 207 [1943]). Second, "statutes relating to the same subject matter . . . must be read together and applied harmoniously and consistently" (Alweis v Evans, 69 NY2d 199, 204 [1987]). Third, we aim to

effectuate the intent of the Legislature, and the clearest

indicator of legislative intent is the plain meaning of the

statutory language (Majewski v Broadalbin-Perth Cent. Sch. Dist.,

91 NY2d 577, 583 [1998]).   Fourth, any claim can be time barred,

including constitutional claims (Block v North Dakota ex. rel Bd.

of Univ. & Sch. Lands, 461 US 273, 292 [1983]).   Fifth, extensive

arguments about a cost allocation scheme's economic and political

wisdom is outside the scope of judicial review (Jeter v

Ellenville Cent. Sch. Dist., 41 NY2d 283, 287 [1977]). As the

Supreme Court has held,

> "[w]hether the enactment is wise or unwise, whether it
> is based on sound economic theory, whether it is the
> best means to achieve the desired result, whether, in
> short, the legislative discretion within its prescribed
> limits should be exercised in a particular manner, are
> matters for the judgment of the legislature, and the
> earnest conflict of serious opinion does not suffice to
> bring them within the range of judicial cognizance."

(Chicago, B & QR Co. v McGuire, 219 US 549, 569 [1911]).

In other words, the counties cannot challenge the State's

decision to prospectively reallocate Medicaid payments.

        With these principles in mind, we are able to resolve

these appeals without deciding between the parties' competing

positions as to whether Section 61 extinguishes substantive

claims, or merely sets forth the outer temporal limit during

which counties may challenge the State's initial overburden

payment determination to seek additional reimbursement.  If we

assume, arguendo, that the counties have a vested right to any

reimbursements that accrued before 2006, then under any possible

theory presented in these appeals, Section 61 is constitutional.

By its express language that "no reimbursement shall be made for social services districts' claims submitted on and after the effective date of this paragraph, for district expenditures incurred prior to January 1, 2006," Section 61 terminates the submission of pre-2006 claims past its effective date.  This legislatively-mandated cutoff date was a response to judicial misinterpretations of prior statutory efforts to end the claims process which was administratively instituted by DOH under the State's former Medicaid allocation regime (Mem in Support of 2012-13 NY Executive Budget, Health and Mental Hygiene art VII Legis, at 18 [2012][Section 61 necessary to address adverse court decisions that conflict with statute's original intent]).  Once the State complied with its statutory obligation under Social Services Law § 368-a (1) (h) (i) to pay the counties for overburden reimbursements, it was fully consistent with the prior mandatory reimbursement scheme for the Legislature to impose a deadline on claims for unpaid funds.  That deadline was neither in conflict with a fundamental law nor our constitutional principles.  Just as the Counties cannot be heard to complain that the Legislature replaced one Medicaid allocation scheme with another, thus redefining the counties' expense burden, so too are the counties without recourse when the Legislature imposes a deadline on the counties' submission of claims for overburden reimbursements, thereby closing the door on pre-2006 claims.

There is also no merit to the Counties' claim that procedural due process mandates that Section 61 be extended beyond its effective date in order to protect their vested rights in any unpaid funds.  It is well established that procedural due process guarantees notice and an opportunity to be heard before a claimant is deprived of liberty or a recognized property interest (Matter of Quinton A., 49 NY2d 328, 334 [1980]).  "[N]o one rule as to the length of time which will be deemed reasonable can be laid down for the government of all cases alike. Different circumstances will often require a different rule. What would be reasonable in one class of cases would be entirely unreasonable in another" (McGahey v Commonwealth of Virginia, 135 US 662, 707 [1890]).  The question distills to what is reasonable under the circumstances (Terry v Anderson, 95 US 628, 633 [1877]).  In deciding the Counties' argument for additional time to submit claims, our analysis focuses on the overburden reimbursement claims process, the litigation following the enactment of the Cap Statute, and the question of whether the counties have been denied the opportunity to pursue claims before enactment of the statutory prohibition on submissions.

As the record establishes, as far back as 1988 the counties were on notice under Social Services Law § 368-a (1) (h) (i) and the State's regulations that the State was obliged to pay overburden reimbursements, and that the counties could pursue claims for any amounts they believed they were still owed after

payment.  The counties had information available to pursue those claims in the decades leading up to the passage of Section 61. For years, the counties knew on a weekly basis the amount the State was taking to satisfy the counties' local share of Medicaid expenses, and the State provided the counties with quarterly reports and other documents by which the counties could determine if they had a potential claim.  Only after the enactment of the Cap Statute, and in reliance of its interpretation that the legislature thereby set for the counties a fixed, non-reducible maximum payment, did the State categorically reject claims submitted after 2006.  The dispute over these claims spawned close to a decade of litigation in the Appellate Division, involved numerous counties, and resulted in the eventual payment of all outstanding claims.  Armed with the success of this litigation, while still aware of the State's continued efforts to close the door on pre-2006 claims, the counties continued to submit more claims as the effective date of Section 61 approached.  Given this history, we cannot say that the counties did not have notice of the claims process or an opportunity to seek reimbursement for claims, including those going back over twenty years.

Moreover, as the Counties recognize, they have no claim to the continuation of the former overburden reimbursement system in perpetuity because the State acted well within its authority to reallocate Medicaid spending under a new legislative

framework, as it did with the passage of the Cap Statute (L 2005, ch 58, § 1, part C, § 9, as amended by L 2006, ch 57, § 1, part A, § 60). Notably, the Cap Statute provides significant financial benefit to the counties, and does not place them in a demonstrably worse position than under the overburden reimbursement claims process. As the State contends, and the Counties do not dispute, the counties saved billions of dollars in the years following the enactment of the Cap Statute.

Our analysis must also give weight to the judgment of the Legislature that claims should be extinguished with the enactment of the budget on April 1, 2012 (Terry, 95 US at 633). As the State argues, this deadline furthers the State's significant interest in the stability of its finances and the budgeting process.

Under the unique circumstances of this case we do not consider the deadline set by the Legislature repugnant to due process. Therefore, there is no basis to extend the time for submission of pre-2006 claims beyond the years previously available to the counties and the date set forth in Section 61.[3]

---

[3] The Counties' reliance on Brothers v Florence (95 NY2d 290 [2000]), in support of their request for a "grace period" beyond the legislative deadline is misplaced. Even treating Section 61 as a statute of limitations, the appeals before us require that we consider the history and relationship between the Counties and the State. Unlike the potential claimants in Brothers, the Counties have twice avoided legislative attempts to end the submissions process, and by the State's undisputed estimate, the counties have already been paid approximately 98% of their claims. Therefore, the Counties' demand for more time is not

III.

We also conclude that mandamus relief is unwarranted. This Court has repeatedly stated that mandamus is an "extraordinary remedy" that is "available only in limited circumstances" (Klostermann v Cuomo, 61 NY2d 525, 537 [1984]). "Mandamus is used to enforce an administrative act positively required to be done by a provision of law" (Walsh v La Guardia, 269 NY 437, 441 [1936]). It is considered extraordinary because the judiciary is loathe to interfere with the Executive Department's exercise of its official duties, unless the Department has failed to perform a specific act (id.) Here, DOH made its initial determinations and reimbursed counties quarterly, and then paid out all claims submitted prior to the April 1, 2012 deadline. The Social Services Law requires no more and the Counties are not entitled to this relief. Moreover, ordering mandamus is inconsistent with our conclusion that Section 61 is constitutional.

IV.

Accordingly, in Matter of County of Chemung and Matter of County of St. Lawrence, the orders insofar as appealed from should be reversed, without costs, the petitions dismissed in their entirety and a declaration made in favor of respondents Nirav R. Shah, &c., et al. that section 61 of part D of Chapter

_____

supported here.

56 of the Laws of 2012 has not been shown to be unconstitutional; in Matter of County of Chautauqua, Matter of County of Jefferson, Matter of County of Oneida, Matter of County of Genesee, Matter of County of Cayuga, and Matter of County of Monroe, the orders insofar as appealed from should be affirmed, without costs.

M/O County of Chemung v Shah

No. 136-143

GARCIA, J.(concurring):

While I am in general agreement with the result arrived at by the majority, I reach that conclusion by a somewhat different analysis that I believe is more in line with the unique facts and procedural issues we confront here.

These cases present the conflicting interpretations of Section 61 by the Third and Fourth Departments. The Third Department held that Section 61 did not retroactively extinguish the counties' right to reimbursement for certain Medicaid overpayments -- or "overburden expenses" -- under Social Services Law § 368-a (1) (h) and instead that court treated Section 61 as a statute of limitations on the payment of claims for pre-2006 reimbursement (see County of St. Lawrence v Shah, 124 AD3d 88 [3d Dept 2014]). In light of this interpretation, the Third Department imposed a six-month grace period for the submission of reimbursement claims and granted mandamus relief requiring the Department to identify, calculate, and pay outstanding overburden expenses. Conversely, the Fourth Department held that Section 61 unequivocally extinguished the counties' right to pre-2006 reimbursement but later held that the counties could not challenge this action on due process grounds, despite the New

- 1 -

York State Department of Health's (DOH) waiver of the capacity defense, because they lack the "personhood" necessary to do so (see County of Niagara v Shah, 122 AD3d 1240 [4th Dept 2014]; County of Chautaqua v Shah, 126 AD3d 1317 [4th Dept 2015]).  I would reject the Third Department's interpretation of Section 61 as a statute of limitations, adopt the Fourth Department's interpretation of the statute but reject its personhood analysis, and hold that the statute is constitutional under a vested due process rights analysis.

With respect to the Fourth Department's determination that Section 61 extinguishes the counties' right to reimbursement, I agree that Section 61 evinces a clear intent to foreclose any pre-2006 reimbursement claim.  The language explicitly states that the statute is being enacted "notwithstanding" Social Services Law § 368-a (1) (h).  As a result, "no reimbursement shall be made for social services districts' claims submitted on or after [the amendment's effective date] for district expenditures incurred prior to January 1, 2006 [including overburden expenditures]" (L 2012, ch 56, § 1, part D, § 61).

This interpretation of the plain language of the statute is likewise supported by the tortured litigation history that led to its enactment.  The Legislature first enacted the Medicaid Cap Statute (Cap Statute) in 2006, and litigation ensued following its passage.  After courts determined that the Cap

Statute did not extinguish the counties' right to reimbursements,[1] the Legislature passed an amendment in 2010 stating that "the state/local social services district relative percentages of the non-federal share of medical assistance expenditures incurred prior to January 1, 2006 shall not be subject to adjustment on or after July 1, 2006" (L 2010, ch 109, pt B, § 204). DOH's interpretation of this amendment as barring the counties' right to pre-2006 overburden reimbursements led to a new round of litigation, again resulting in opinions holding that the amendment did not extinguish DOH's obligation to pay these reimbursement claims. This litigation history prompted the passage of Section 61. Clearly, the Legislature was not imposing a new time limit for filing claims: the intent was to extinguish those claims and end this process.

Where the language of a statute directs us to ignore a specific prior statute in addition to "any other contrary provision of law," it is unnecessary to "harmonize" the two statutes. Accordingly, the Third Department's interpretation of Section 61 as a statute of limitations was error. Nor is such a reading warranted to make the statute constitutional because, for

---

[1] It is unclear what the majority means in casting these decisions as "judicial misinterpretations" (majority op. at 14); none of the relevant lower court decisions were reviewed by this Court (see e.g. County of Herkimer v Daines, 60 AD3d 1456 [4th Dept], lv denied, 13 NY3d 708 [2009]; County of St. Lawrence v Daines, 81 AD3d 212, 214-216 [3d Dept], lv denied, 17 NY3d 703 [2011]).

the reasons discussed below, Section 61 is constitutional under a vested due process rights analysis.

Turning to the issue of whether in extinguishing the claims the Legislature violated due process, it is necessary to address the threshold issue of capacity of the counties to bring this suit.  New York strictly adheres to the rule that "municipalities lack the capacity to bring suit to invalidate State legislation"  (City of New York v State of New York, 86 NY2d 286, 290 [1995]).  Nor is it at all clear that plaintiffs here would have fit their claims within one of the narrow exceptions to that general rule, such as proprietary interest in a specific fund of moneys (id. at 291-292).  Nevertheless, capacity, a waivable defense, was concededly waived here[2] (see City of New York, 86 NY2d at 292).  I would reject the Fourth Department's interpretation of our case law as requiring the demonstration of an additional, undefined "personhood" requirement as a prerequisite to sue on due process grounds.  The only support given for this interpretation is the reference to a "substantive right" to raise constitutional matters in Jeter v

---

[2] The majority's conclusion that the State waived any challenge to the counties' argument that they fit within an exception to the capacity defense misses the point (majority op. at 12).  The State has forfeited the right to assert that the counties lack the capacity to sue the State.  The counties still need to demonstrate some form of due process interest requiring constitutional protection; however, it need not be the narrow "proprietary interest" necessary to overcome a properly asserted capacity defense.

Ellenville Central School District (41 NY2d 283, 287 [1977]), but a fair reading of that case demonstrates that the concern was capacity, not "personhood." As a result, we can assume under the unique facts of this case that the counties had a vested property right in the refund of money spent to cover costs properly allocated to the State (see Alliance of Am. Insurers v Chu, 77 NY2d 573, 585-86 [1991]).

The waiver of the capacity defense and the determination that there is no additional personhood requirement, and an assumption that a vested property right exists in refunds owed, makes necessary a vested due process rights analysis to determine whether Section 61 is constitutional. This straightforward analysis examines "fairness to the parties, reliance on pre-existing law, the extent of retroactivity, and the nature of the public interest to be served by the law" (Alliance of Am. Insurers, 77 NY2d at 586).

I would uphold the statute's constitutionality on the basis of such an analysis. The new payment system of Section 61 provides some financial benefit to the counties in exchange for extinguishing the prior claims and in this way treats the counties fairly. The fact that those counties might disagree with the financial calculation is immaterial. Moreover, the economic or political wisdom of that calculation is beyond our review (see Jeter, 41 NY2d at 287). The counties had no right to rely on the pre-existing payment system. Since the Cap Statute

was enacted in 2005, the counties were on notice of changes in the reimbursement regime, and years of litigation and failed statutory amendments demonstrated DOH's plain intent to extinguish pre-2006 reimbursement claims.  The statute is minimally retroactive, applying only to those pre-2006 claims that were not brought by 2012.  Moreover, Section 61 serves the public interest in overhauling a system fraught with error and inefficiencies that still saw uncertainty with respect to the amount of outstanding claims -- some potentially going back decades.

Enactment of Section 61 extinguishing the counties' pre-2006 claims was not unconstitutional.  Because there is no need to read in any "statute of limitations," there is also no need to provide a grace period or grant mandamus relief. Accordingly, I agree with the Fourth Department's interpretation of Section 61 as extinguishing the counties' right to pre-2006 reimbursement, and hold that there was no due process violation in that legislative action.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

For Case No. 136:  Order, insofar as appealed from, reversed, without costs, petition dismissed in its entirety and a declaration made in favor of respondents Nirav R. Shah, &c., et al. that section 61 of part D of Chapter 56 of the Laws of 2012 has not been shown to be unconstitutional.  Opinion by Judge Rivera.  Chief Judge DiFiore and Judges Pigott and Abdus-Salaam concur.  Judge Garcia concurs in result in a separate concurring opinion.  Judges Stein and Fahey took no part.

For Case No. 137:  Order, insofar as appealed from, reversed, without costs, petitions dismissed in their entirety and a declaration made in favor of respondents Nirav R. Shah, &c., et al. that section 61 of part D of Chapter 56 of the Laws of 2012 has not been shown to be unconstitutional.  Opinion by Judge Rivera.  Chief Judge DiFiore and Judges Pigott and Abdus-Salaam concur.  Judge Garcia concurs in result in a separate concurring opinion.  Judges Stein and Fahey took no part.

For Case Nos. 138, 139, 140, 141, 142 and 143:  Order, insofar as appealed from, affirmed, without costs.  Opinion by Judge Rivera. Chief Judge DiFiore and Judges Pigott and Abdus-Salaam concur. Judge Garcia concurs in result in a separate concurring opinion. Judges Stein and Fahey took no part.


Decided October 27, 2016