Van Dyke v U.S. Bank, Natl. Assn. (2025 NY Slip Op 06537)

Van Dyke v U.S. Bank, Natl. Assn.

2025 NY Slip Op 06537

Decided on November 25, 2025

Court of Appeals

Singas, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on November 25, 2025

No. 97

[*1]Patti Van Dyke, Respondent,
v
U.S. Bank, National Association, Appellant.

Jonathan M. Robbin, for appellant.
Thomas M. Curtis, for respondent.
Mark S. Grube, for intervenor Office of the New York State Attorney General.
USFN - America's Mortgage Banking Attorneys, Legal Services NYC et al., United Jewish Organizations of Williamsburg, Inc., New York State Foreclosure Defense Bar, Francis M. Caesar, American Legal & Financial Network, New York Mortgage Bankers Association, Inc., amici curiae.

SINGAS, J.

:
In this quiet title action, we must determine whether sections 4, 7, and 8 of the Foreclosure Abuse Prevention Act (FAPA) (L 2022, ch 821) operate retroactively and, if so, whether applying those provisions here violates the Due Process or Contract Clauses of the U.S. Constitution. We hold that FAPA's relevant provisions have retroactive effect, and we reject defendant's as-applied challenges to their application. We therefore affirm.
[*2]I.
A.
Residential mortgage loans typically are memorialized in two standardized contractual instruments. First, the borrower executes a promissory note by which they assume responsibility for repaying the loan, typically by making installment payments with interest. Second, the borrower executes a mortgage by which they convey a security interest in the subject property to the lender.
Residential mortgage loan agreements commonly contain an acceleration clause triggered if the borrower defaults on the loan. An acceleration clause gives the holder of the borrower's promissory note the right, in the event of the borrower's default, to demand the borrower's immediate payment of the entire outstanding loan balance. A noteholder typically can accelerate a loan in various ways—including, for example, by filing "a verified complaint seeking foreclosure and containing a sworn statement that the noteholder is demanding repayment of the entire outstanding debt" (Freedom Mtge. Corp. v Engel, 37 NY3d 1, 22 [2021], citing Albertina Realty Co. v Rosbro Realty Corp., 258 NY 472, 476 [1932]). In all events, unless the loan agreement says otherwise, "to be valid, an election to accelerate must be made by an 'unequivocal overt act' that discloses the noteholder's choice" (id.). Moreover, before FAPA's enactment, we recognized that an accelerated loan could in some circumstances be de-accelerated, meaning that the lender's demand for immediate repayment in full is revoked (see Article 13 LLC v Ponce De Leon Fed. Bank, — NY3d &mdash, — [2025] [decided today]).
These concepts can have significant consequences on the limitations period to foreclose on a defaulted residential mortgage loan. An action to enforce a residential mortgage loan agreement sounds in breach of contract and is subject to a six-year statute of limitations (see CPLR 213 [4]). Prior to a noteholder's acceleration of a defaulted loan, the six-year limitations period runs separately as to each installment payment missed by the borrower. By contrast, when a noteholder accelerates a defaulted loan, the six-year limitations period starts running as to the entire amount due under the loan as of the date of the acceleration. Thus, in assessing a foreclosure action's timeliness, determining whether and when the subject loan was accelerated can be critical.
We most recently addressed these principles in Freedom Mtge. Corp. v Engel. There, we held as a matter of first impression that, "absent an express, contemporaneous statement to the contrary by the noteholder," where a loan has been accelerated "via the commencement of a foreclosure action, a voluntary discontinuance of that action—i.e., the withdrawal of the complaint—constitutes a [de-acceleration] . . . as a matter of law" (37 NY3d at 31-32). We further explained that a de-acceleration caused the six-year limitations period to reset, such that if the borrower defaulted again, the noteholder could re-accelerate the loan, causing "a new foreclosure claim on th[e entire] outstanding debt . . . [to] accrue with a [new] six-year limitations period" (id. at 28).
[*3]B.
In December 2022, in response to Engel and other developments, the Governor signed FAPA into law. Sections 4 and 8 of FAPA overrule components of Engel. Under section 4, "[o]nce a cause of action . . . has accrued" under, as relevant here, a residential mortgage loan agreement, "no party may, in form or effect, unilaterally waive, postpone, cancel, toll, revive, or reset the accrual thereof, or otherwise purport to effect a unilateral extension of the limitations period prescribed by law . . . , unless expressly prescribed by statute" (L 2022, ch 821, § 4, codified at CPLR 203 [h]). And under section 8, "[i]n any action on," as relevant here, a residential mortgage loan agreement, "the voluntary discontinuance of such action, whether on motion, order, stipulation or by notice, shall not, in force or effect, waive, postpone, cancel, toll, extend, revive or reset the limitations period . . . , unless expressly prescribed by statute" (id. § 8, codified at CPLR 3217 [e]). These provisions thus curtailed noteholders' ability to unilaterally reset the foreclosure limitations period by de-accelerating a defaulted loan.
Next, section 7 of FAPA estops a noteholder in a successive foreclosure action from challenging the validity of a loan acceleration made "prior to, or by way of commencement of" a prior foreclosure action, unless the court in the prior action expressly determined, based on a timely raised defense, that the acceleration was invalid. As relevant here, the statute provides:
"In any action seeking cancellation and discharge of record of [among other things, a residential mortgage], a defendant shall be estopped from asserting that the period allowed by the applicable statute of limitation for the commencement of an action upon the instrument has not expired because the instrument was not validly accelerated prior to, or by way of commencement of a prior action, unless the prior action was dismissed based on an expressed judicial determination, made upon a timely interposed defense, that the instrument was not validly accelerated" (id. § 7, codified at CPLR 213 [4] [b]).[FN1]
Lastly, section 10 sets forth FAPA's effective date. It provides that FAPA "shall take effect immediately and shall apply to all actions commenced on[, as relevant here, a residential mortgage loan agreement,] in which a final judgment of foreclosure and sale has not been enforced."
II.
In 2007, plaintiff took out a loan memorialized by a promissory note and secured by a mortgage on real property in the Bronx. She now seeks to cancel and discharge the mortgage on the ground that the limitations period to enforce her loan agreement has expired. Her claim implicates developments in three proceedings: a prior foreclosure action brought by defendant's predecessor in interest against plaintiff in 2009, the instant action, and a successive foreclosure action brought by defendant against plaintiff in 2022.
[*4]A.
In April 2009, plaintiff defaulted on the loan by failing to make an installment payment, and she has not made any installment payments since. Later that year, in October 2009, defendant's predecessor, Bank of New York Mellon Trust Company (Mellon), commenced a foreclosure action against plaintiff under the promissory note and mortgage. Mellon's verified complaint alleged that Mellon "[wa]s the owner and holder of the subject mortgage and note, or ha[d] been delegated the authority to institute a mortgage foreclosure action by the owner and holder of the subject mortgage and note." The complaint also purported to accelerate plaintiff's loan. Plaintiff answered and pleaded as an affirmative defense that at the time Mellon's action was commenced, Mellon lacked "standing" to foreclose under the loan agreement.[FN2] In that regard, the present record suggests that Mellon was not assigned plaintiff's promissory note and mortgage until December 2009, more than a month after Mellon's action was commenced, in which case Mellon lacked an interest in either instrument when it filed suit.
Notwithstanding, Mellon's action remained pending for more than a decade. During this time, in September 2016, defendant was assigned the note and mortgage,[FN3] and the parties cross-moved for summary judgment on the issue of Mellon's standing to sue under the loan agreement. In 2019, Supreme Court issued an order denying the motions because "[i]ssues of fact exist[ed] as to [Mellon's] possession of the [promissory] note." The parties cross-appealed Supreme Court's order, and in 2020, the Appellate Division affirmed (see Bank of N.Y. Mellon Trust Co. v Van Dyke, 180 AD3d 480 [1st Dept 2020]).
In March 2022—nearly 13 years after Mellon's action was commenced, 5½ years after defendant obtained the note and mortgage, and more than two years after the Appellate Division's affirmance—Supreme Court so-ordered a stipulation discontinuing the action without prejudice. The stipulation stated that "based upon" Supreme Court's affirmed order denying summary judgment on the issue of Mellon's standing, Mellon had "failed to demonstrate that it had standing to commence the [a]ction." The stipulation did not address or purport to revoke Mellon's purported acceleration of the loan.
B.
The month after the voluntary discontinuance of Mellon's foreclosure action, in April 2022, plaintiff commenced this quiet title action (see RPAPL 1501 [4]). The complaint relevantly alleged that plaintiff's loan had been accelerated more than six years prior to the instant action's commencement, and that the limitations period to seek enforcement of plaintiff's loan agreement had therefore expired. Meanwhile, also in 2022, defendant commenced a successive foreclosure action of its own against plaintiff under the loan agreement. That action remains pending.
In the instant action, defendant moved to dismiss the complaint, relevantly asserting that plaintiff's loan was never validly accelerated. In response, plaintiff cross-moved for summary judgment. FAPA then took effect while the parties' motions awaited decision, and the parties submitted supplemental briefing disputing whether and how FAPA applies.
Supreme Court issued two orders resolving the parties' motions in plaintiff's favor. The first order addressed FAPA § 7—the provision that estops a party in a successive foreclosure action from challenging the validity of certain prior loan accelerations, unless the court in the prior foreclosure action expressly determined that the prior acceleration was invalid and dismissed the prior action on that basis. The court held that this provision applies by its [*5]terms and estops defendant from challenging the validity of Mellon's 2009 acceleration of the loan. And because more than six years had passed since that acceleration, the court determined that the limitations period to sue under plaintiff's loan agreement had expired. The second order rejected defendant's challenges to FAPA's retroactive application and granted summary judgment to plaintiff. Supreme Court then entered judgment cancelling and discharging the mortgage.
The Appellate Division unanimously affirmed (see 235 AD3d 517 [1st Dept 2025]). We granted defendant leave to appeal (see 43 NY3d 905 [2025]).
III.
We must first determine whether FAPA §§ 4, 7, and 8 operate retroactively. "[R]etroactive operation [of a statute] is not favored . . . and statutes will not be given such construction unless the language expressly or by necessary implication requires it" (Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 584 [1998]). Thus, "[g]enerally, nonprocedural statutes are not to be applied retroactively absent a plainly manifested legislative intent to that effect" (Matter of Marino S., 100 NY2d 361, 370 [2003] [internal quotation marks omitted]). "There is certainly no requirement that particular words be used—and, in some instances, retroactive intent can be discerned from the nature of the legislation" (Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal, 35 NY3d 332, 370 [2020]). "Most importantly, the reach of the statute ultimately becomes a matter of judgment made upon review of the legislative goal" (Marino S., 100 NY2d at 371 [internal quotation marks omitted]; accord People v Galindo, 38 NY3d 199, 207 [2022]).
For the reasons set forth in Article 13 LLC v Ponce De Leon Fed. Bank (see — NY3d at &mdash), FAPA's text and legislative history "plainly manifest[ ]" the legislature's intent that these provisions have retroactive effect (Marino S., 100 NY2d at 370).[FN4] We therefore hold that the provisions apply retroactively. Accordingly, because "a final judgment of foreclosure and sale has not been enforced" in this action (L 2022, ch 821, § 10), FAPA §§ 4, 7, and 8 govern here by their terms.
IV.
Defendant next claims that applying FAPA §§ 4, 7, and 8 would violate its federal constitutional rights to substantive and procedural due process (see US Const, 14th Amend, § 1 ["nor shall any State deprive any person of life, liberty, or property, without due process of law"]). "[I]t is well settled that acts of the [l]egislature are entitled to a strong presumption of constitutionality" (American Economy Ins. Co. v State of New York, 30 NY3d 136, 149 [2017], quoting Matter of County of Chemung v Shah, 28 NY3d 244, 262 [2016]). The party attacking the legislation bears "the ultimate burden of overcoming that presumption by demonstrating the [statute]'s constitutional invalidity" (id.). Moreover, the U.S. Supreme Court has explained that while "prospectivity remains the appropriate default rule," under federal law, "the constitutional impediments to retroactive civil legislation are now modest" (Landgraf v USI Film Products, 511 US 244, 272 [1994]). We hold that FAPA's application to this action passes constitutional muster.
A.
As further explained in Article 13 LLC (see — NY3d at &mdash), legislation can implicate substantive due process where it "takes away or impairs vested rights . . . in respect to transactions or considerations already past" (Landgraf, 511 US at 269), and where its retroactive application lacks an adequate rational basis (see e.g. American Economy Ins. Co., 30 NY3d at 157-158). Defendant's substantive due process challenge raises both issues.
[*6]1.
Defendant posits two vested rights at issue: its property interest in the mortgage, and its interest in prosecuting its pending 2022 foreclosure action, which defendant asserts was timely under the pre-FAPA laws in effect when the action was brought. In accordance with our analysis and holding in Article 13 LLC (see — NY3d at &mdash), we reject defendant's arguments on this score.
As for defendant's property interest in the mortgage, as Article 13 LLC explains (see id. at &mdash), it is the six-year statute of limitations, not FAPA itself, that has extinguished that interest. Indeed, defendant and its predecessors (including Mellon) chose to allow Mellon's prior foreclosure action to remain pending for more than a dozen years—more than double the six-year limitations period. For substantially the reasons that Article 13 LLC sets forth, applying FAPA § 7's estoppel bar does not unconstitutionally impair defendant's property interest in the mortgage.
Nor do FAPA §§ 4 and 8 impermissibly infringe upon the property interest that defendant asserts. Defendant argues that, but for FAPA, the filing of Mellon's 2009 foreclosure complaint did not trigger the limitations period in the first place, on the theory that under pre-FAPA law, the discontinuance of Mellon's 2009 action rendered Mellon's acceleration a "legal nullity." Defendant reasons that by retroactively giving that "nullity" legal effect, FAPA has extinguished defendant's property interest. But our case law does not and has not supported that premise, certainly not in a manner capable of conferring a vested right. Defendant has not identified any well-settled authority holding that a foreclosure action's voluntary discontinuance—after the statute of limitations has expired—"nullifies" the parties' conduct attendant to that action so as to enable an expired limitations period to run anew.[FN5]
Lastly, defendant's asserted interest in litigating its pending 2022 foreclosure action also lacks merit. Even assuming, without deciding, that a party may have a vested right in a timely commenced cause of action, defendant has not established as a legal matter that the 2022 foreclosure action was timely brought under well-settled pre-FAPA law, and thus has not shouldered its "ultimate burden" of "demonstrating [FAPA]'s constitutional invalidity" as applied here (American Economy Ins. Co., 30 NY3d at 149; cf. Engel, 37 NY3d at 28-29 [pre-FAPA, "the Appellate Division departments . . . consistently held that, absent a (contrary) provision in the operative agreements," de-acceleration "c(ould) be accomplished by an 'affirmative act' of the noteholder within six years of the election to accelerate" (emphasis added)]).
2.
To comport with substantive due process, a statute's retroactive application must be supported by "a legitimate legislative purpose furthered by rational means" (American Economy Ins. Co., 30 NY3d at 157-158, quoting General Motors Corp. v Romein, 503 US 181, 191 [1992]). That is, "the retroactive application of the legislation" must "itself [be] justified by a rational legislative purpose" (Regina Metro. Co., 35 NY3d at 375, quoting Pension Benefit Guaranty Corporation v R. A. Gray & Co., 467 US 717, 730 [1984]). Thus, we must ask whether we can identify an adequate rational basis for applying FAPA's relevant provisions to this action. In this regard, the U.S. Supreme Court has stressed that "the potential unfairness of retroactive civil legislation is not a sufficient reason for a court to fail to give a statute its intended scope" (Landgraf, 511 US at 267).
In accordance with our analysis and holding in Article 13 LLC (see — NY3d at &mdash), we discern such a rational basis here. FAPA's legislative history identifies certain "abus[ive]" litigation practices engaged in by mortgage lenders and noteholders as the animating force behind FAPA's enactment: the sponsors' memoranda state "legislat[ive] find[ings]" to this effect (Assembly Mem. in Support, Bill Jacket, L 2022, ch 821, at 8; accord Senate Introducer's Mem., Bill Jacket, L 2022, ch 821, at 98). In light of the legislature's determination that these "abuses" [*7]should be curtailed, it is rational for FAPA to apply retroactively to shield as many borrowers as possible from those practices. Moreover, insofar as FAPA's relevant provisions clarify or change the manner in which the six-year statute of limitations applies, FAPA's retroactive application also rationally advances "the strong public policy favoring finality, predictability, fairness and repose" in human affairs (Regina Metro. Co., 35 NY3d at 372).
In sum, we reject defendant's substantive due process challenge to FAPA's application.
B.
Defendant next invokes procedural due process under the U.S. Constitution, pointing to our case law holding that when the legislature shortens a limitations period, it must afford parties a reasonable grace period in which to bring claims that were timely under the old limitations period but are untimely under the new limitations period (see Brothers v Florence, 95 NY2d 290, 300-306 [2000]). On this point, defendant acknowledges that FAPA did not change the six-year statute of limitations but argues that FAPA's relevant provisions change how the limitations period runs.
We reject this claim for the reasons stated in Article 13 LLC (see — NY3d at &mdash). Simply put, because FAPA did not shorten the limitations period, procedural due process does not demand a reasonable grace period before FAPA's relevant provisions take effect.
V.
Defendant also asserts that applying FAPA to this action would violate the U.S. Constitution's Contract Clause (see US Const, art I, § 10, cl 1 ["No state shall . . . pass any . . . Law impairing the Obligation of Contracts"]). When determining a Contract Clause claim, "[t]he threshold inquiry is whether the state law has, in fact, operated as a substantial impairment of a contractual relationship" (American Economy Ins. Co., 30 NY3d at 150, quoting 19th St. Assoc. v State of New York, 79 NY2d 434, 442 [1992]; accord Energy Reserves Group, Inc. v Kansas Power & Light Co., 459 US 400, 411 [1983]). This "initial inquiry contains 'three components: whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial' " (American Economy Ins. Co., 30 NY3d at 150, quoting General Motors Corp., 503 US at 186). Even where all three components are satisfied, the Contract Clause is not violated if the impairment has "a significant and legitimate public purpose," and if "the adjustment of 'the rights and responsibilities of contracting parties is based upon reasonable conditions and is of a character appropriate to the public purpose justifying the legislation's adoption' " (Energy Reserves Group, Inc., 459 US at 411-412 [alterations omitted]). Furthermore, "[u]nless the State itself is a contracting party, 'as is customary in reviewing economic and social regulation, courts properly defer to legislative judgment as to the necessity and reasonableness of a particular measure' " (id. at 412-413 [citation, footnote, and alterations omitted], quoting United States Trust Co. of N. Y. v New Jersey, 431 US 1, 22-23 [1977]).
Assuming without deciding that FAPA's application here works a substantial impairment of defendant's contractual right, that impairment reasonably and appropriately furthers the significant and legitimate public purposes [*8]that motivated FAPA's enactment. Affording the requisite "defer[ence] to legislative judgment" in this arena regarding "the necessity and reasonableness of" FAPA's relevant provisions (id. at 413), the provisions are sensibly tailored to the specific litigation practices that the legislature saw fit to curb via FAPA's enactment: they narrowly bar successive, collateral challenges to certain prior loan accelerations and curtail noteholders' ability to unilaterally reset the limitations period to foreclose. In doing so, as already explained, the provisions also sensibly advance "the strong public policy favoring finality, predictability, fairness and repose" (Regina Metro. Co., 35 NY2d at 372). What is more, the provisions operate in the "highly regulated" landscape of mortgage foreclosure litigation—an area long wrought with competing interests and complex policy judgments and in which "the allocation of economic benefits and burdens has always been subject to adjustment" (American Economy Ins. Co., 30 NY3d at 152 [alterations omitted]; see also Article 13 LLC, — NY3d at &mdash). Accordingly, applying FAPA to the instant action does not violate the Contract Clause.
VI.
Finally, defendant seeks reversal on the ground that FAPA § 7, by its terms, does not estop defendant from arguing that Mellon's 2009 acceleration of the loan was invalid and, as such, never triggered the limitations period. Defendant's theory is that in Mellon's prior foreclosure action, Supreme Court's order denying summary judgment on the issue of Mellon's standing to foreclose, the Appellate Division's affirmance of that order, and the so-ordered stipulation stating that Mellon had failed to prove its standing were "expressed judicial determination[s]" that Mellon lacked standing as a matter of law (L 2022, ch 821, § 7).
We reject that baseless contention. "[T]he denial of [a summary judgment] motion establishes nothing except that summary judgment is not warranted at th[e] time" (David D. Siegel & Patrick M. Connors, New York Practice § 287 [6th ed, Dec. 2024 update]; see Weinstein, Korn & Miller, New York Civil Practice: CPLR ¶ 3212.12 [2d ed 2025] ["A denial of a summary judgment motion is not an adjudication on the merits"]). The affirmed summary judgment order and so-ordered stipulation did not relevantly determine anything; thus, they do not trigger FAPA § 7's estoppel exception. Because the six-year limitations period triggered by Mellon's 2009 acceleration had expired when plaintiff commenced this action, and because FAPA § 7 estops defendant from challenging that acceleration's validity, Supreme Court correctly granted judgment in plaintiff's favor.
VII.
In enacting FAPA, the legislature exercised its prerogative to overrule aspects of Engel and to curtail certain foreclosure-related practices that the legislature deemed disconsonant with principles of fairness, finality, and repose. In doing so, the legislature made plain its intent that FAPA §§ 4, 7, and 8 apply retroactively to actions pending on FAPA's effective date. The parties and amici debate FAPA's merits as a matter of economic policy, but that is a question for the legislature on which we take no view. As for FAPA's constitutionality, defendant has failed to demonstrate that it offends the U.S. Constitution's due process guarantee or the Contract Clause as applied to this case.
Defendant's remaining contentions are unpreserved or academic in light of our determinations.
Accordingly, the order of the Appellate Division insofar as appealed from should be affirmed, with costs.
Order insofar as appealed from affirmed, with costs. Opinion by Judge Singas. Chief Judge Wilson and Judges Rivera, Garcia, Cannataro, Troutman and Halligan concur.
Decided November 25, 2025

Footnotes

Footnote 1: Section 7 also contains a parallel provision applicable to plaintiffs in, as relevant here, residential mortgage foreclosure actions (see L 2022, ch 821, § 7, codified at CPLR 213 [4] [a]).

Footnote 2: The parties frame this issue as implicating Mellon's standing to foreclose. We therefore adopt that label without opining on its appropriateness in this context.

Footnote 3: Mellon assigned the promissory note and mortgage to a nonparty in 2015, and after changing hands an additional time that year, the note and mortgage were then assigned to defendant. The record indicates that defendant possesses the note and mortgage in its capacity as trustee for Truman 2016 SC6 Title Trust.

Footnote 4: Article 13 LLC concerns only FAPA § 7. Our reasons for holding that the legislature intended FAPA § 7 to apply retroactively apply equally to FAPA §§ 4 and 8.

Footnote 5: Contrary to defendant's contention, we stated in Loeb v Willis that when an action is discontinued, "the adjudication therein . . . is not an estoppel or bar in any sense" (100 NY 231, 235 [1885] [emphasis added]; see also Brown v Cleveland Trust Co., 233 NY 399, 406 [1922] ["The action having been discontinued, there was no adjudication in that action which bound any one"]). Loeb does not stand for the proposition that the discontinuance of Mellon's foreclosure action retroactively nullified Mellon's acceleration of the loan.