Ditech Fin. LLC v Temple (2026 NY Slip Op 00951)

Ditech Fin. LLC v Temple

2026 NY Slip Op 00951

Decided on February 19, 2026

Appellate Division, Third Department

Clark, J.P.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:February 19, 2026

CV-24-1488

[*1]Ditech Financial LLC, Appellant,
vJason Temple et al., Respondents, et al., Defendants.

Calendar Date:January 7, 2026

Before: Clark, J.P., Aarons, Pritzker, Reynolds Fitzgerald and Fisher, JJ.

Hinshaw & Culbertson LLP, New York City (Diane C. Ragosa of counsel), for appellant.
Fairbanks Fletcher Law PLLC, Saratoga Springs (Elizabeth Fairbanks-Fletcher of counsel), for respondents.

Clark, J.P.
Appeals (1) from an order of the Supreme Court (Vincent Versaci, J.), entered January 3, 2024 in Schenectady County, which, among other things, determined that the Foreclosure Abuse Prevention Act applies retroactively, and (2) from an order of said court, entered July 31, 2024 in Schenectady County, which, among other things, granted a cross-motion by defendants Jason Temple, Lori Temple and Creative Encounters, LLC for summary judgment dismissing the complaint.
In August 2007, defendants Jason Temple and Lori Temple (hereinafter the borrowers) executed a note to borrow $200,700, which was secured by a mortgage on real property in Schenectady County. Under the terms of the note, the lender had the right to accelerate the debt and require immediate payment in full in the event of a default. The mortgage was subsequently assigned to Federal National Mortgage Association (hereinafter FNMA), which commenced a mortgage foreclosure action in August 2008 due to the borrowers' alleged May 2008 default under the terms of the loan. FNMA's complaint in the foreclosure action elected to "call due the entire amount secured by the mortgage." The borrowers did not appear in the 2008 foreclosure action. However, in or around December 2008, they entered into a loan modification agreement [FN1] with a successor assignee that modified the principal balance, interest rate and monthly payment amounts under the note. Based upon such agreement, in April 2009, FNMA filed a Notice to Cancel Lis Pendens, discontinuing the 2008 foreclosure action.
The loan modification agreement was not recorded in the Schenectady County Clerk's office. In December 2014, a successor assignee — Green Tree Servicing LLC — filed an action pursuant to RPAPL article 15 (hereinafter the Green Tree action) seeking, among other things, an order imposing an equitable lien and/or constructive trust on the mortgaged premises and directing the Schenectady County Clerk to accept a copy of the loan modification agreement for filing, nunc pro tunc to the date of execution, insofar as the original version had been lost or destroyed. Green Tree sought recordation of the agreement to secure its position as first lienholder with respect to the mortgaged premises. The Green Tree action was dismissed in August 2016, when Supreme Court (Reilly Jr., J.) granted the borrowers' motion for summary judgment dismissing the complaint, finding, among other things, that Green Tree's "moving papers failed to establish that [it] has a cognizable claim for" an order compelling the county to accept a copy of the loan modification agreement for recordation, and that the cause of action seeking enforcement of an equitable lien on the subject premises based upon such agreement was barred by the expiration of the six-year statute of limitations (see CPLR 213 [1]).
On November 29, 2018, plaintiff — then the holder of the note — accelerated the entire outstanding debt by commencing the instant foreclosure action against the borrowers [*2]and defendant Creative Encounters, LLC (hereinafter collectively referred to as defendants)[FN2] based upon a December 1, 2012 default.[FN3] Defendants jointly answered, raised various affirmative defenses, including that the action was time-barred, and interposed counterclaims to quiet title and for counsel fees and costs.
Plaintiff subsequently moved for summary judgment on liability seeking, among other things, an order striking defendants' answer and counterclaims, and the appointment of a referee to ascertain and compute the amount due and owing on the mortgage. Defendants opposed plaintiff's motion and cross-moved for summary judgment dismissing the complaint, for an order quieting title and discharging the mortgage of record, and for counsel fees and costs. As relevant here, defendants argued that the instant action was time-barred under the recently-enacted Foreclosure Abuse Prevention Act (see L 2022, ch 821 [hereinafter FAPA]), which went into effect in December 2022, as more than six years had elapsed since the mortgage debt was accelerated in 2008 through the filing of the complaint in the first action. Defendants emphasized that, under FAPA, the 2009 voluntary discontinuance of the first action did not de-accelerate the debt and reset the statute of limitations. As for the effect of the loan modification agreement on the statute of limitations, defendants asserted that such agreement "does not exist." Therefore, since the prior acceleration was never validly revoked, defendants maintained that the statute of limitations continued to run from August 2008 onward and expired in August 2014, four years prior to the commencement of the instant action.
By decision and order entered January 3, 2024, Supreme Court (Versaci, J.), found that defendants established, on a prima facie basis, that the action was time-barred since the six-year statute of limitations began to run in August 2008 — when FNMA commenced the 2008 foreclosure action and accelerated the entire debt — and plaintiff did not commence the instant action until 2018. Relying on a provision of FAPA codified at CPLR 3217 (e), the court rejected plaintiff's argument that the voluntary discontinuance of the initial foreclosure action de-accelerated the debt and caused the statute of limitations to run anew with the filing of the 2018 action.[FN4] Supreme Court also rejected plaintiff's argument that the 2008 loan modification agreement de-accelerated the debt and recommenced the limitations period, finding that: (1) Supreme Court (Reilly Jr., J.) already determined in the Green Tree action that the agreement was unenforceable since it was never recorded with the Schenectady County Clerk, and that such determination had res judicata effect in the instant action; (2) plaintiff would not have standing to enforce the loan modification agreement even if it were enforceable insofar as there was no evidence that the agreement had been assigned to plaintiff; and (3) the agreement itself "does not contain [*3]any language expressly stating that the debt was being [de-accelerated] or that the statute of limitations was being waived, extended, postponed or reset." Supreme Court (Versaci, J.) otherwise reserved decision on plaintiff's constitutional challenge to the retroactive application of FAPA insofar as plaintiff did not notify the Attorney General that it was challenging the constitutionality of the statute (see CPLR 1012 [b] [1]), and set a deadline by which plaintiff was to do so.
In accordance with Supreme Court's directive, plaintiff notified the Attorney General's office that it was raising a constitutional challenge to the retroactive application of FAPA, and the Attorney General declined to intervene. Thereafter, by decision and order entered July 31, 2024, Supreme Court, among other things, denied plaintiff's motion for summary judgment on liability and granted defendants' cross-motion for summary judgment dismissing the instant action as time-barred. As relevant here, the court held that the retroactive application of FAPA did not violate plaintiff's constitutional rights and concluded, as a matter of law, that the six-year limitations period expired on August 27, 2014, rendering the instant action, filed over four years after the expiration date, untimely. Plaintiff appeals from the January 2024 and July 2024 orders.
Plaintiff argues that Supreme Court erred in concluding as a matter of law that the instant action is time-barred. We agree. "An action to enforce a residential mortgage loan agreement sounds in breach of contract and is subject to a six-year statute of limitations" (Van Dyke v U.S. Bank, N.A., ___ NY3d ___, 2025 NY Slip Op 06537, *2 [2025]; see CPLR 213 [4]; U.S. Bank N.A. v Craft, 240 AD3d 1140, 1142 [3d Dept 2025]). The six-year limitations period "runs separately as to each installment payment missed by the borrower" (Van Dyke v U.S. Bank, N.A., ___ NY3d at ___, 2025 NY Slip Op 06537, *2; see Article 13 LLC v Ponce De Leon Fed. Bank, ___ NY3d ___, ___, 2025 NY Slip Op 06536, *1 [2025]). When, however, a noteholder accelerates a defaulted loan — which may occur through a clause in a verified complaint "containing a sworn statement that the noteholder is demanding repayment of the entire outstanding debt" (Van Dyke v U.S. Bank, N.A., ___ NY3d at ___, 2025 NY Slip Op 06537, *2 [internal quotation marks and citations omitted]) — the right of the borrower to pay the loan in installments terminates, the full amount remaining on the loan becomes due, and "the six-year limitations period starts running as to the entire amount due under the loan as of the date of the acceleration" (Van Dyke v U.S. Bank, N.A., ___ NY3d at ___, 2025 NY Slip Op 06537, *2; see Article 13 LLC v Ponce De Leon Fed. Bank, ___ NY3d at ___, 2025 NY Slip Op 06536, *2).
An accelerated loan can be de-accelerated within six years of the initial acceleration (see US Bank N.A. v Craft, 240 AD3d at 1145; Ajax Mtge. Loan Trust 2021-C, Mtge.-Backed Sec., Series 2021[*4]-C v Steele, 240 AD3d 1037, 1039 [3d Dept 2025]). In that scenario, a valid de-acceleration returns the parties to their pre-acceleration rights and obligations and resets the limitations period anew (see US Bank N.A. v Craft, 240 AD3d at 1145; Ajax Mtge. Loan Trust 2021-C, Mtge.-Backed Sec., Series 2021-C v Steele, 240 AD3d at 1039-1040).
Here, it is undisputed that plaintiff's predecessor in interest validly accelerated the loan when it commenced the first foreclosure action in August 2008 and elected to call due the entire amount owed under the mortgage, thereby causing the statute of limitations period to begin to run at that time. As defendants proffered evidence that the instant foreclosure action was commenced more than six years later, Supreme Court correctly found that defendants satisfied their prima facie burden to establish that the instant action is time-barred (see CPLR 213 [4]; U.S. Bank N.A. v Craft, 240 AD3d at 1142).
However, in opposition, plaintiff submitted evidence establishing that the 2008 acceleration was validly revoked through the execution of the loan modification agreement, thereby causing the statute of limitations to reset as of that date.[FN5] Defendants do not dispute that, even after FAPA, a validly executed loan modification agreement can reset the statute of limitations period on a previously accelerated loan, so long as the agreement complies with the writing requirements of General Obligations Law § 17-105 (1) (see General Obligations Law § 17-105 [4]; Ajax Mtge. Loan Trust 2021-C, Mtge.-Backed Sec., Series 2021-C v Steele, 240 AD3d at 1039; Senate Introducer's Mem in Support, Bill Jacket, L 2022, ch 821 at 105 n 3).[FN6]
We disagree with Supreme Court's finding that the loan modification agreement did not do so in this case. Initially, Supreme Court erred in giving res judicata effect to a purported finding made in the 2016 decision and order in the Green Tree action that the loan modification agreement was unenforceable due to the lack of recording. The 2016 decision and order in the Green Tree action did not rule on that issue and the lack of recording does not affect the agreement's enforceability (see Metropolitan Life Ins. Co. v Wahid, 230 AD3d 671, 672 [2d Dept 2024]; Hopper v Lockey, 17 AD3d 912, 914 [3d Dept 2005]; Commonwealth Land Tit. Ins. Co. v Lituchy, 161 AD2d 517, 518 [1st Dept 1990]; see also Real Property Law §§ 290, 291). Supreme Court also erred in concluding that plaintiff — which produced evidence that it was the holder of the note at the time the instant action was commenced — did not have standing to enforce the agreement due to the lack of evidence that the loan modification agreement had been assigned to it (see generally Aurora Loan Servs., LLC v Taylor, 25 NY3d 355, 361-362 [2015]; HSBC Bank USA, N.A. v Tigani, 185 AD3d 796, 799 [2d Dept 2020]; Bank of N.Y. Mellon v Cronin, 151 AD3d 1504, 1506 [3d Dept 2017], lv dismissed 31 NY3d 1061 [2018]).
We also disagree with Supreme Court's determination [*5]that the loan modification agreement was insufficient to reset the limitations period because it "does not contain any language expressly stating that the debt was being [de-accelerated] or that the statute of limitations was being waived, extended, postponed or reset." The loan modification agreement acknowledged the mortgage debt and made an express promise to pay it, thereby satisfying the necessary writing requirements of General Obligations Law § 17-105 (1) to de-accelerate the loan and to reset the statute of limitations (see General Obligations Law § 17-105 [4]; Batavia Townhouses, Ltd. v Council of Churches Hous. Dev. Fund. Co., Inc., 38 NY3d 467, 473 [2022]; U.S. Bank Trust N.A. v Chambers, 244 AD3d 1529, 1531 [3d Dept 2025]; 14-Fillm Corp. v Mid-Island Mtge. Corp., 218 AD3d 525, 527 [2d Dept 2023]; compare Wilmington Trust, N.A. v Farkas, 232 AD3d 524, 525 [1st Dept 2024]).
Although defendants no longer dispute that the loan modification agreement is valid and enforceable, they nevertheless argue that the instant action is untimely since it was not commenced within six years of the agreement's execution date or within six years from the borrowers' "last payment" in 2009, relying on General Obligations Law §§ 17-105 (1) and 17-107 (1) in support of such proposition. To that end, General Obligations Law § 17-105 (1) provides, in relevant part, that "a promise to pay the mortgage debt, if made after the accrual of a right of action to foreclose the mortgage and made . . . by the express terms of a writing signed by the party to be charged[,] is effective, subject to any conditions expressed in the writing, to make the time limited for commencement of the action run from the date of the . . . promise" (emphasis added). Relying on the italicized language of this provision, defendants maintain that, since the loan modification agreement contained a promise to pay the mortgage debt, the statute of limitations ran from the date the loan modification agreement was executed, rendering the instant action, commenced over six years later, untimely. Under the circumstances of this case, we disagree (compare HSBC Bank USA, N.A. v Mohammed, 233 AD3d 1060, 1062-1063 [2d Dept 2024]).
When a loan modification agreement validly de-accelerates the debt, the lender's prior right of action deaccrues (see Senate Introducer's Mem in Support, Bill Jacket, L 2022, ch 821 at 105 n 3) and the statute of limitations is reset anew "from the date of the
. . . promise" (General Obligations Law § 17-105 [1]; U.S. Bank Trust N.A. v Chambers, 244 AD3d at 1531).[FN7] In the case of an installment loan, there is a continuing promise to pay each installment. Nothing in FAPA or the General Obligations Law changed the basic rule that the statute of limitations runs separately from the due date of each unpaid installment (see Van Dyke v U.S. Bank, N.A., ___ NY3d at ___, 2025 NY Slip Op 06537, *2; U.S. Bank Trust N.A. v Chambers, 244 AD3d at 1531; U.S. Bank N.A. v Creative Encounters [*6]LLC, 194 AD3d 1135, 1136 [3d Dept 2021]; Lavin v Elmakiss, 302 AD2d 638, 639 [3d Dept 2003], lv dismissed 100 NY2d 577 [2003], lv denied 2 NY3d 703 [2004]), or, if the mortgagee elects to accelerate the entire debt, from the date of the acceleration (see U.S. Bank Trust N.A. v Chambers, 244 AD3d at 1531; U.S. Bank N.A. v. Catalfamo, 189 AD3d 1786, 1787 [3d Dept 2020]).
To the extent defendants alternatively argue that the action is untimely because it was not commenced within six years of 2009, when the last payments under the loan modification agreement were made, we also disagree. Defendants' missed payments in 2009 gave plaintiff the right to sue to recover such payments, but did not obligate plaintiff to do so. Instead, plaintiff could wait to exercise its option to accelerate the entire amount of the debt upon any subsequent default, in which case the statute of limitations would run from the date of the acceleration (see U.S. Bank Trust N.A. v Chambers, 244 AD3d at 1530; Lavin v Elmakiss, 302 AD2d at 639), subject to forfeiture of the right to recover any missed payments that did not occur within six years prior to the commencement of the foreclosure action (see Ditech Financial, LLC v Reiss, 175 AD3d 618, 620 [2d Dept 2019]; Wells Fargo Bank, N.A. v Burke, 94 AD3d 980, 983 [2d Dept 2012]). As the loan modification validly de-accelerated the debt within six years of the initial acceleration, the statute of limitations was reset as of the date the agreement was executed, rendering the instant foreclosure action, which seeks to recover the full amount outstanding on the mortgage and re-accelerated the debt with the filing of the action, timely (see U.S. Bank Trust N.A. v Chambers, 244 AD3d at 1531).
Plaintiff's constitutional challenge to the retroactive application of FAPA is no longer viable following the Court of Appeals' decisions in Article 13 LLC v Ponce De Leon Fed. Bank and Van Dyke v U.S. Bank, N.A. The parties' remaining contentions, including defendants' argument under General Obligations Law § 17-107, have been considered and found unavailing.
Aarons, Pritzker, Reynolds Fitzgerald and Fisher, JJ., concur.
ORDERED that the orders are reversed, on the law, without costs, and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision.

Footnotes

Footnote 1: The copy of the loan modification agreement contained in the record states that it was being entered into on November 19, 2008, but the signature pages show that the borrowers signed the agreement on December 5, 2008. Initially, the borrowers disputed that they had executed the loan modification agreement. However, defense counsel conceded during oral argument before this Court that the copy of the agreement contained in the record on appeal is valid and enforceable. The record also contains evidence of the borrowers' payments under the agreement.

Footnote 2: Defendant Creative Encounters, LLC obtained title to the subject premises by quitclaim deed dated February 4, 2015. Plaintiff also named two other individuals and 12 "John Does" as defendants, but they are not the subject of this appeal.

Footnote 3: The record shows that the borrowers made only a few payments under the loan modification agreement, the latest of which were received in 2009.

Footnote 4: At the time of Supreme Court's decision, there were no published decisions from this Court or the Court of Appeals resolving the question of whether FAPA applies retroactively to cases commenced before the effective date of the statute where a final judgment of foreclosure had not yet been enforced.

Footnote 5: During the pendency of this appeal, the Court of Appeals issued two decisions holding that various sections of FAPA apply retroactively to foreclosure actions in which a final judgment of foreclosure and sale has not been enforced (see L 2022, ch 821, § 10; Article 13 LLC v Ponce De Leon Fed. Bank, ___ NY3d at ___, 2025 NY Slip Op 06536, *1; Van Dyke v U.S. Bank, N.A., ___ NY3d at ___, 2025 NY Slip Op 06537, *3), including a provision that now renders a mortgagee's unilateral voluntary discontinuance of a mortgage foreclosure action ineffective to "toll, extend, revive or reset" the statute of limitations (L 2022, ch 821, § 8, codified at CPLR 3217 [e]; see Van Dyke v U.S. Bank, N.A., ___ NY3d at ___, 2025 NY Slip Op 06537, *3). Consequently, plaintiff does not continue to argue on appeal that the unilateral voluntary discontinuance of the 2008 foreclosure action de-accelerated the loan and reset the six-year limitations period (see CPLR 203 [h]; 3217 [e]).

Footnote 6: FAPA precludes lenders from unilaterally resetting the statute of limitations on their own accord, but it does not preclude borrowers from consenting to do so through the execution of a bilateral contract complying with the writing requirements of General Obligations Law § 17-105 (1) (see CPLR 203 [h]; Van Dyke v U.S. Bank, N.A., ___ NY3d at ___, 2025 NY Slip Op 06537, *3).

Footnote 7: To the extent defendants argue that the statute of limitations automatically accrued against the lender upon the execution of the loan modification agreement, such argument is plainly without merit. A statute of limitations cannot begin to run until a cause of action accrues and a cause of action does not accrue until "all of the facts necessary to the cause of action have occurred so that [a] party would be entitled to obtain relief in court" (Hahn Automotive Warehouse, Inc. v American Zurich Ins. Co., 18 NY3d 765, 770 [2012] [internal quotation marks and citation omitted]). In the case of a foreclosure action, a default on the loan is the triggering event that gives the mortgagee a right, but not an obligation, to sue (see Wells Fargo Bank, N.A. v Burke, 94 AD3d 980, 982-983 [2d Dept 2012]; Lavin v Elmakiss, 302 AD2d 638, 639 [3d Dept 2003], lv dismissed 100 NY2d 577 [2003], lv denied 2 NY3d 703 [2004]; see generally Article 13 LLC v Ponce De Leon Fed. Bank, ___ NY3d at ___, 2025 NY Slip Op 06536, *2). Thus, when a loan modification agreement validly de-accelerates the debt and deacrrues the prior right of action, a new cause of action to foreclose does not arise until a subsequent default.