| M&T Bank v Zaroom |
|:---:|
| 2026 NY Slip Op 30886(U) |
| March 2, 2026 |
| Supreme Court, Kings County |
| Docket Number: Index No. 513011/2016 |
| Judge: Menachem M. Mirocznik |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

At IAS Part FRP5 of the Supreme Court
of the State of New York, held in and for
the County of Kings, at the Courthouse
located at 360 Adams Street, Brooklyn,
NY 11201, on the 2ⁿᵈ of March 2026

PRESENT:   HON. MENACHEM M. MIROCZNIK
JUSTICE OF THE SUPREME COURT

---

M&T BANK,

                            Plaintiff,

        -against-

AVNER ZAROOM, GILA ZAROOM, MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS, INC.,
ACTING SOLELY AS NOMINEE FOR
METROPOLITAN NATIONAL BANK MORTGAGE
COMPANY, LLC, HSBC BANK USA NATIONAL
ASSOCIATION AND AMERICAN EXPRESS
CENTURION BANK,

                            Defendants.

**Index No. 513011/2016**

**Decision, Order and Judgment**
**(Motion Seq. 6 and 7)**

| Papers | Numbered |
|---|---|
| Notice of Motion | NYSCEF Doc. 160-165 |
| Notice of Cross-Motion/Opposition Papers | NYSCEF Doc. 166-168 |
| Opposition to Cross-Motion/Reply Papers | NYSCEF Doc. 173-176 |
| Reply to Cross-Motion | NYSCEF Doc. 177-179 |

Upon the foregoing papers, the motion(s) is/are determined in accordance with this Decision, Order and Judgment as follows:

## FACTUAL AND PROCEDURAL HISTORY

This nearly decade-old action was commenced on July 29, 2016, seeking to foreclose a consolidated mortgage (the "mortgage") executed by defendants Avner Zaroom and Gila Zaroom (the "defendants") encumbering the property known as 2612 Avenue J, Brooklyn, New York 11210 (the "property").

On January 14, 2010, plaintiff's predecessor commenced a foreclosure action seeking to foreclose the mortgage entitled *Citimortgage Inc v. Zaroom, Et al*; under Index Number 1104/2010 (the "2010 Foreclosure"). The complaint in the 2010 Foreclosure accelerated the mortgage and demanded payment in full. On October 18, 2013, 2010 Foreclosure was dismissed for neglect to prosecute. On October 19, 2015, CitiMortgage Inc. attempted to revoke the acceleration of the mortgage by sending notice of de-acceleration to defendants.

1

[* 1]

On August 30, 2016, defendants joined issue with the filing of an answer that asserted various affirmative defenses including that the subject mortgage is barred by the statute of limitations and a counterclaim to discharge the mortgage pursuant to RPAPL 1501[4].

On October 7, 2016, plaintiff filed reply to defendants' counterclaim.

On April 30, 2018, the Court granted plaintiff's motion for summary judgment and order of reference. The Court found that this action was timely in light of plaintiff's revocation of the acceleration by notice of de-acceleration.

On September 4, 2019, the Court granted plaintiff's motion to confirm the referee's report and issued a judgment of foreclosure and sale.

On May 7, 2024, the Court denied defendants' motion to renew the April 30, 2018 order granting summary judgment, to vacate the judgment of foreclosure and dismiss this action as barred by the statute of limitations in light of passage of Foreclosure Abuse Prevention Act into law, effective December 30, 2022 (L 2022, ch 821 ["FAPA"], § 10). The motion was denied solely on the basis that the motion was untimely having been brought after the time to appeal from the judgment of foreclosure and sale had expired. Defendants timely appealed and that appeal is fully perfected and is awaiting oral argument.

Plaintiff now moves for an extension of time to conduct the foreclosure sale and for the substitution of a new publication for the notice of sale. Defendants cross-move for leave to renew their prior application and for leave to reargue same.[1]

## DISCUSSION

### I.    Introduction

Before the Court is plaintiff's motion to extend the time to conduct the foreclosure sale and defendants' cross-motion for leave to renew and reargue seeking application of FAPA to vacate the prior judgment of foreclosure and sale and dismiss this action as time-barred.

Plaintiff contends that defendants' motion to renew is untimely because it was made after expiration of the time to appeal from the judgment of foreclosure and sale. That contention cannot be reconciled with the controlling interpretation of FAPA §10 by the Court of Appeals and the unanimous appellate authority that has since applied it.

The Court of Appeals has now made clear that FAPA applies retroactively and broadly to **all** foreclosure actions in which "a final foreclosure sale had not been enforced prior to its effective date, including actions pending at the time of its effective date." *Article 13 LLC v Ponce De Leon Fed. Bank,* ___NY3d___, 2025 NY Slip Op 06536 [2025]["*Article 13*"]; See also *Van Dyke v US. Bank, NA.,* __NY3d __, 2025 NY Slip Op 06537 [Nov. 25, 2025]["*Van Dyke*"]. In adopting that interpretation, the Court explained that the Legislature deliberately chose the enforcement of the foreclosure judgment - i.e., the judicial sale of the property - as the operative cutoff for the statute's retroactive reach. *Id.* Thus, under FAPA §10, the dispositive inquiry is not whether the time to

---

[1] The instant motion was referred to this Court after the Hon. Lawrence Knipel retired. For purposes of CPLR 2221[a] the underlying issue of forum shopping is thus not present herein.

[* 2]

appeal from the judgment has expired, but whether the judgment has been enforced through a foreclosure sale.

Thus, on this question, the three branches of government have spoken with one voice. The Legislature enacted FAPA with an express retroactivity clause keyed to whether a foreclosure judgment has been enforced. The Executive approved that enactment. And the Court of Appeals has confirmed that the statute applies broadly to all foreclosure actions in which the judgment has not yet been enforced through a judicial sale. As will be detailed below, the Appellate Division - across three departments -has uniformly applied that directive.

Because the foreclosure judgment in this case remains unenforced, defendants' motion to renew is timely as a matter of law. And because FAPA applies retroactively to this action, the statute of limitations bars the foreclosure claim. Plaintiff's motion to extend the time to conduct a foreclosure sale in an action that must now be dismissed is therefore denied.

II.     **FAPA Applies to All Actions Where a Judgment of Foreclosure and Sale Has Not Been "Enforced". A Judgment of Foreclosure and Sale Is Not Deemed "Enforced" Until After the Judicial Sale Is Held.**

FAPA §10, which provides:

> "This act shall take effect immediately and shall apply to *all* actions commenced on an instrument described under [CPLR 213(4)] in which a final judgment of foreclosure and sale has not been *enforced*."[emphasis added]

The Appellate Division has consistently held that enforcement of a judgment of foreclosure and sale occurs only upon the judicial sale of the property. See *US Bank N.A. v Livoti*, 243 AD3d 721 [2d Dept 2025][FAPA applies where an auction has been scheduled but not conducted because the judgment has not been enforced]; *Wells Fargo v Ferrato*, 238 AD3d 436, 437 [1st Dept 2025] ["Enforcement" of a foreclosure judgment is understood as the conducting of a sale]. In the established lexicon of foreclosure law, enforcement of such a judgment means the judicial sale of the property. See *Banque Arabe Et Internationale D'Investissement v One Times Sq. Ltd. Partnership*, 223 AD2d 384, 385 [1st Dept 1996] ["Upon such [judicial] sale, the foreclosure proceeding was terminated"].

In *FV-I, Inc. v Samuels*, 240 AD3d 757, 760 [2d Dept 2025]["*Samuels*"], the Second Department rejected the notion serving a notice of sale is tantamount to enforcement of the judgment of foreclosure. Specifically, the Court held that "[e]nforcement of a judgment of foreclosure and sale is generally deemed complete when the sale is concluded…Since the auction sale had not yet been held in this action as of the effective date of FAPA, the plaintiff had not yet enforced the judgment of foreclosure and sale at that time and, therefore, FAPA applies." Indeed, FAPA §10 utilizes the term "enforced" in the past tense, i.e. the conclusion of enforcement not actions taken in anticipation thereof. Service of a notice of sale is not enforcement of the judgment, let alone a conclusion of enforcement. It is merely notice of a "possible future" enforcement event. See *21st Mortg. Corp. v Adames*, 153 AD3d 474 [2d Dept 2017]["nothing more than…a possible future event."] cf. *Deutsche Bank Nat. Tr. Co v Royal Blue Realty Holdings, Inc.*, 148 AD3d 529,

3

[* 3]

530 [1st Dept 2017], *abrogated by Freedom Mtge. Corp. v Engel*, 37 NY3d 1 [2021] abrogated by FAPA §7.

The record establishes that the judgment of foreclosure and sale has not been enforced: no sale has occurred, no deed has transferred, and no proceeds have been distributed. The mere Notice of a foreclosure auction that never occurred does not constitute "enforcement" of the judgment. Because the foreclosure judgment here has not been enforced through a judicial sale, defendants' motion invoking FAPA is timely as a matter of law.

### III. CPLR 2221[e] Imposes No Statutory Time Limit, and FAPA §10 Creates a Legislative Exception to Any Judicially Crafted Timeliness Rule. There is Unanimity Amongst the Appellate Division Departments.

The plain language of CPLR 2221[e] imposes no statutory time limit on a motion to renew. See CPLR 2221[e]; *Deutsche Bank Natl. Tr. Co. v Goldwasser*, 237 AD3d 1291 [3d Dept 2025]["*Goldwasser*"]. Historically, courts developed a prudential rule that such motions generally should be made before final judgment or before the time to appeal therefrom expires, based on the *policy* consideration that "there must be an end to lawsuits." *Matter of Huie (Furman)*, 20 NY2d 568, 572 [1967] ["Huie"].

*Huie*, however, made clear that this limitation is *judicially created*, not statutory, let alone a constitutional one. The Court of Appeals explained that the timing rule governing motions to renew exists only as a prudential measure designed "to balance the availability of relief following a change in law with the interest in finality", while recognizing that *the Legislature remains free to alter that balance by statute. Huie*, 20 NY2d at 571-572.

The Legislature did precisely that in FAPA §10, which expressly provides it is applicable *all* actions where "a final judgment of foreclosure and sale has not been enforced." By its plain terms, the statute applies to any foreclosure action in which the judgment has not been enforced, without regard to when the judgment was entered or whether the time to appeal has expired. Nothing in the statute carves out cases in which renewal would otherwise be considered untimely.

The Appellate Division has now applied this statutory directive with unanimity.

The Third Department held in *Goldwasser*, that FAPA §10 creates a legislative exception to the judicial timing rule described in *Huie*. Rejecting the argument that renewal was untimely because the motion was made after the time to appeal had expired, the court concluded:

> "In our view, the Legislature's assertion that FAPA applies to 'all actions... in which a final judgment of foreclosure and sale has not been enforced' ... created such an exception. As such, we find that the motion to renew was timely."

*Goldwasser*, 237 AD3d at 1293.

The First Department held in *US Bank NA v Gallant*, 237 AD3d 522 [1st Dept 2025]["*Gallant*"] that renewal based on FAPA is untimely after the time to appeal from the Judgment expired. In *21st Mtge. Corp. v Lin*, 242 AD3d 401 [1st Dept 2025], *recalled and vacated*,

[* 4]

2026 NY Slip Op 01116 [1st Dept Feb. 26, 2026]["*Lin*"], applied its holding in *Gallant* to find that an appeal based upon FAPA is untimely.

However, following the Court of Appeals' clarification of FAPA's retroactive scope in *Article 13* - the First Department granted renewal in *Lin* and confirmed that renewal is timely even after the time to appeal expired where a judgment of foreclosure and sale has not been enforced. The court explained that the only way to effectuate FAPA's retroactive application after entry of a foreclosure judgment is through a motion to renew brought before the foreclosure sale is conducted and therefore held that such a motion is timely even where the time to appeal from the judgment has expired.

Taken together, *Goldwasser, Samuels,* and *Lin* establish a uniform rule across the Appellate Division's First, Second, and Third Departments: where a judgment of foreclosure and sale has not been enforced through a judicial sale, a motion invoking FAPA may not be denied as untimely based on the expiration of the appeal period.

This case fits squarely within that framework.

Plaintiff insists that permitting renewal after the appeal period undermines finality. The identical argument was rejected in *Goldwasser*, where the court explained that the Legislature, not the judiciary, determines when retroactive corrective legislation may disturb prior proceedings. Indeed, "the constitutional principle of separation of powers, implied by the separate grants of power to each of the coordinate branches of government, requires that *the Legislature* make the critical policy decisions". *Bourquin v Cuomo*, 85 NY2d 781, 784 [1995][emphasis added]. FAPA remains consistent with the rule set by Court of Appeals precedent, insofar as the Legislature merely specified a later date - when the judgment has been "enforced" - for the "end to lawsuits" for foreclosure. *Huie,* 20 NY2d at 572.

This understanding reflects the longstanding principle that a judgment of foreclosure and sale occupies a unique procedural posture. Unlike most judgments, it remains at least partially interlocutory until execution through the foreclosure sale. See *Nutt v Cuming,* 155 NY 309 [1898].

The legislative history of FAPA reflects the same understanding. As a former Court of Appeals Justice, the Hon. Robert S. Smith (Ret.), a former Associate Judge of the Court of Appeals observed in an opinion letter included in the FAPA Bill Jacket, "there is a sense in which the judgment is not 'final'; until the sale is complete, the litigation remains pending, and the borrower retains the right to prevent the sale and redeem the property by paying the mortgage debt." FAPA Bill Jacket at 95.

The Court in *Goldwasser* observed that the Legislature enacted FAPA "to clarify the judicial process...while also protecting homeowners from having to defend multiple foreclosure actions for lengths of time that far exceed the applicable statutes of limitations." *Goldwasser,* 237 AD3d at 1294.

Once the Legislature directed that FAPA applies to all unenforced foreclosure judgments, and once the Appellate Division confirmed that this statutory directive creates an express legislative exception permitting renewal beyond the appeal period, this Court lacks discretion to deny renewal as untimely.

5

[* 5]

The Second Department's decision in *Samuels* also compels the conclusion that a motion for relief under FAPA is timely even when the time to appeal from the judgment has expired, provided the judgment has not yet been enforced.

In *Samuels*, the record below reveals that a judgment of foreclosure and sale had been entered months earlier in October 2022, no appeal had been taken, and the defendant moved in June 2023 - well after the appeal period had run-to invoke FAPA. *See* NYSCEF Docket, *FV-1 Inc. v. Samuels*, Sup. Ct., Nassau Cty. Index No. 002371/2017. The plaintiff expressly argued that the judgment was final and insulated from retroactive relief. *See FV-1 Inc. v. Samuels*, 2d Dept Docket No. 2023-11698, NYSCEF Doc. 26, *8-10. The Second Department rejected that contention, holding that because "the auction sale had not yet been held...the plaintiff had not yet enforced the judgment of foreclosure and sale...and, therefore, FAPA applies." *Samuels, supra.* Relying on the FAPA Bill Jacket and its own recent precedent, the court concluded that the Supreme Court "should have granted" the motion to vacate the judgment and dismiss the action as time-barred. *Id.* at 761.2

Importantly, the movant in *Samuels* did not style his motion as a CPLR 2221 motion to renew, *per se.* Regardless of the appellation of the motion, given FAPA §10's clear command that FAPA applies to all actions where a judgment has not been enforced, the only applicable temporal limitation for a motion which invokes FAPA is: "has the judgment of foreclosure and sale been enforced"? After all, "[i]t does not matter how a motion is titled by an attorney. What matters is what the motion actually is in substance". *Citibank, NA. v Kerszko*, 203 AD3d 42, 55 [2d Dept 2022]; See also *Coke-Holmes v Holsey Holdings, LLC*, 189 AD3d 1162 [2d Dept 2020]["The courts are not bound by the label appended to the motion by a party, and can designate a motion for renewal as one for reargument if it presents neither new facts nor a change in the law."]; *Sutton v Syla*, 223 AD3d 764 [2d Dept 2024]["The courts are not bound by the label appended to the motion by a party, and can designate a motion for renewal as one for reargument if it presents neither new facts nor a change in the law"]; *L. Raphael NYC C1 Corp. v Solow Bldg. Co., L.L.C.*, 206 AD3d 590, 592 [1st Dept 2022]["[T]he nature of an action or remedy does not necessarily depend upon the nomenclature used by a party, but instead, upon the character of the allegations to determine its true nature...Accordingly, and because [the party] also moved for "other and further relief," we may deem its motion to have been made under a more appropriate procedural mechanism that affords it essentially the same relief that it seeks...provided that such a mechanism exists." ] [internal citations and quotation marks omitted]

Here, the defendants styled their prior motion as both under FAPA §10 and as a motion to renew under CPLR 2221. This Court concludes that under either appellation, the motion is timely, since the judgment of foreclosure and sale has not been enforced.[3]

---

[2] Notably, the defendant in *Samuels* did not raise the statute of limitations in opposition to the motion for summary judgment or the motion for a judgment of foreclosure and sale, and the Second Department still granted the motion to vacate the judgment of foreclosure and sale and dismissed the action as time-barred. Thus, *Samuels* (consistent with *Tucker*) instructs that even a so-called "waiver" of the statute of limitations defense, by "failing" to interpose it in opposition to the motion for summary judgment or motion for a judgment of foreclosure, is no barrier to the application of the Legislature's unequivocal command that FAPA apply to all actions where a judgment of foreclosure and sale has not been enforced.

[3] Other trial courts have applied FAPA retroactively, post-judgment, where no sale has been held pursuant to the judgment. *See New Residential Mtge., LLC v Tobing*, Index No. 135145/2018, NYSCEF Doc. 161 [Sup. Ct. Richmond County June 5, 2023] [applying FAPA retroactively, even post-judgment, where no sale pursuant to judgment of

[* 6]

**IV.** **The Legislature Chose Not to Impose an Appeal-Deadline Limitation, and This Court May Not Rewrite FAPA to Add One**

It is well established that "[i]t is fundamental that a court, in interpreting a statute, should attempt to effectuate the intent of the Legislature" *S. H. v Diocese of Brooklyn*, 205 AD3d 180, 185 [2d Dept 2022]; *People v Roberts*, 31 NY3d 406, 418 [2018][ "[O]ur task—as it is in every case involving statutory interpretation—is to ascertain the legislative intent and construe the pertinent statutes to effectuate that intent"]; *Riley v County of Broome*, 95 NY2d 455 [2000]["The primary consideration of courts in interpreting a statute is to "ascertain and give effect to the intention of the Legislature".]

*A.* *The Statutory Text Is Clear and Precludes Judicially Created Limitations.*

"All parts of the constitutional provision or statute must be harmonized with each other as well as with the general intent of the whole statute, and effect and meaning must, if possible, be given to the entire statute and every part and word thereof. Indeed, our well-settled doctrine requires us to give effect to each component of the provision or statute to avoid a construction that treats a word or phrase as superfluous." *Matter of Hoffmann v NY State Ind. Redistricting Commn.*, 41 NY3d 341, 359 [2023][internal citations and quotation marks omitted]; See also *People v Roberts*, 31 NY3d 406, 428 [2018]["meaning and effect should be given to every word of a statute and that an interpretation that renders words or clauses superfluous should be rejected."]; *Matter of Jun Wang v James*, 40 NY3d 497 [2023]["[A]ll parts of a statute are intended to be given effect and a statutory construction which renders one part meaningless should be avoided"].

A statute cannot be interpreted in a manner that renders words superfluous or defeats its own operation. *See Hoffmann v New York State Ind. Redistricting Commn.*, 41 NY3d 341, 359 [2023]; *People v. Galindo*, 38 NY3d 199, 205 [2022]. Courts are not free to rewrite statutes. The Court of Appeals has repeatedly cautioned that "courts are not to legislate under the guise of interpretation." *People v Finnegan*, 85 NY2d 53, 58 [1995].

Where, as here, "the statute unequivocally describes in general terms the particular situation in which it is to apply and nothing indicates a contrary legislative intent, the courts should not impose limitations on the clear statutory language." *Matter of Tucker v Bd. of Educ., Community School Dist. No. 10*, 82 NY2d 274, 278 [1993]; see *Article 13, supra*. Thus, "[i]t is not for this Court to engraft limitations onto the plain language of the statute." *Kimmel v State*, 29 NY3d 386, 401 [2017]. Nor may courts "correct" perceived legislative omissions. "We cannot by implication supply in a statute a provision which it is reasonable to suppose the Legislature intended intentionally to omit." *Matter of Diegelman v City of Buffalo*, 28 NY3d 231, 237 [2016].

FAPA §10, expressly provides that it applies "to ***all*** actions…in which a final judgment of foreclosure and sale has not been ***enforced.***"[emphasis added]

"[I]n *Article 13 LLC v Ponce De Leon Fed Bank*, the Court of Appeals clarified the application of the Foreclosure Abuse Prevention Act (FAPA), finding that it applies retroactively and to all foreclosure actions in which "a final foreclosure sale had not been enforced prior to its effective date, including actions pending at the time of its effective date" *Lin, supra.*

---

foreclosure and sale had been held].

[* 7]

As the First Department explained, once *Article 13* clarified that FAPA applies to all foreclosure actions where the judgment has not been enforced, the only procedural mechanism capable of giving effect to that retroactive mandate after entry of a judgment - and after expiration of the appeal period - is a motion to renew brought before the foreclosure sale is conducted. *See id.*

If the Legislature had intended to limit FAPA motions to those filed before expiration of the appeal period, or in any other manner (as addressed below) it could easily have done so - as it did in CPLR 2221[d][3] governing motions to reargue. It did not.

The Third Department recognized precisely this point in *Goldwasser*, holding that FAPA's retroactivity clause "created such an exception" to the judicial timing rule governing renewal motions. *Id.* at 1293. The statute-as enacted and as signed-therefore controls.

Plaintiff's argument - that this Court should impose a judicial timeliness bar because the time to appeal has expired - would require the Court to engraft a limitation onto FAPA that the Legislature deliberately did not include. Nothing in the statutory text suggests an exception where the appeal period has lapsed. New York law does not permit statutes to be construed in a manner that renders their central operative provision meaningless.

### B. The Legislative History Confirms the Legislative Intent.

It is equally well established that legislative history is an important tool to accomplish that goal. See e.g. *Riley v County of Broome*, 95 NY2d 455 [2000]["the legislative history of an enactment may also be relevant and is not to be ignored, even if words be clear…When aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no rule of law which forbids its use, however clear the words may appear on superficial examination."][internal quotation marks omitted]; See *Article 13, supra.* [Court of Appeals *relying heavily on FAPA legislative history to ascertain legislative intent*]

More recent decisions confirm the continued relevance of legislative materials. In *People v Roberts*, 31 NY3d 406 [2018], the Court of Appeals relied repeatedly upon the sponsor's memorandum to interpret the Legislature's intent in enacting New York's identity theft statute. See id. at Similarly, in *Harkenrider v Hochul*, 38 NY3d 494 [2022], the Court conducted an extensive examination of legislative materials— including sponsor memoranda, floor debates, and approval memoranda—to determine the meaning of constitutional amendments.

The Appellate Division has likewise recognized the importance of legislative history in statutory interpretation. In *S.H. v Diocese of Brooklyn*, 205 AD3d 180 [2d Dept 2022], the court began its analysis by examining the legislative history of the statute, including the Senate Introducer's Memorandum and legislative floor statements. See *Id.* at 185-187. There, the Appellate Division conducted systematic analysis of legislative history, stating that "we commence our analysis with a review of the legislative history of the bill" even when "both parties argue that the statute unambiguously supports their view" *Id.* at 185. The court examined the Senate Introducer's Memorandum in support, multiple legislative floor statements, and voting explanations to conclude that "the legislative history supports a finding that the legislature intended" a broad application of the statute. Id. at 187.

8

[* 8]

Here, the legislative history reinforces this conclusion. In discerning the scope of FAPA, the Court of Appeals has looked to legislative materials accompanying the statute. See *Van Dyke*, supra; *Article 13*, supra; see also *Matter of Duell v Condon*, 84 NY2d 773, 783-784 [1995]. In signing FAPA into law, the Governor considered the opinion letter of the Hon. Robert S. Smith (Ret.), a former Associate Judge of the Court of Appeals, who observed that there is "no per se prohibition against retroactive application of legislation to a judgment." FAPA Bill Jacket at 94. Even opponents of the legislation acknowledged that §10 would operate retroactively in any residential foreclosure action where a public auction had not yet occurred. See FAPA Bill Jacket at 255-56 [Memorandum of the New York Mortgage Bankers Association addressed to Governor Hochul] ["[FAPA] would have a retroactive effect on any residential mortgage foreclosure action in which a public auction of the foreclosed property has not been completed"] [emphasis in original]. As the Court of Appeals has observed, where even opponents of legislation recognize its retroactive reach, such commentary confirms the Legislature's intent. See *Matter of Duell v Condon*, 84 NY2d at 784.

Contrary to plaintiff's contention, the policy judgment whether renewal may be sought after expiration of the appeal period is reserved to the Legislature, not the judiciary.

Any interpretation that would bar such a motion as untimely would simply be contrary to the clear intent of the legislature. As the Court of Appeals has observed, "Most importantly, the reach of the statute ultimately becomes a matter of judgment made upon review of the legislative goal." *In re Marino* S., 100 NY2d 361, 371 [2003]; *see Article 13, supra*.

### C. *FAPA Is Remedial Legislation and Must Be Liberally Construed to Correct Prior Judicial Misinterpretations and Prevent Procedural Abuse*

Independent of the statutory text, the Court of Appeals holding in *Article 13* and the Appellate Division's decisions in *Goldwasser, Samuels*, and *Lin*, the conclusion that FAPA applies here - even where the time to appeal has expired - follows from a deeper structural principle: FAPA is remedial legislation. As such, it must be applied liberally to accomplish its remedial purpose.

FAPA is a quintessentially remedial statute designed to correct judicial misinterpretations and restore the intended operation of the statute of limitations. Each Department of the Appellate Division has recognized that FAPA is "remedial" legislation. *See, e.g., FV-1, Inc. v Palaguachi*, 234 AD3d 818, 822 [2d Dept 2025]; *U.S. Bank NA. v Lynch*, 233 AD3d 113, 116-17 [3d Dept 2024]; *Genovese v Nationstar Mtge. LLC*, 223 AD3d 37, 45 [1st Dept 2023]; *Deutsche Bank Natl. Tr. Co. as Tr. for Ameriquest Mtge. Sec. Inc., Asset-Backed Pass-Through Certificates, Series 2005-R5 v Testa*, 243 AD3d 1255 [4th Dept 2025]. The Legislature's judgment that such remedial protection should reach *any foreclosure judgment not yet enforced* is binding. The courts may not graft additional timeliness limits onto the statute.

New York courts have long held that remedial statutes - particularly those enacted to correct judicial misinterpretations and curb procedural abuses – "should be liberally construed to spread [their] beneficial effects as widely as possible." *Post v 120 E. End Ave. Corp.*, 62 NY2d 19, 24 [1984]. FAPA falls squarely within this category. Its text, legislative findings, and history reflect a clear determination to restore the intended operation of statutes of limitations governing foreclosure actions and to curb the procedural gamesmanship identified in *Engel* and its progeny.

9

[* 9]

*See Van Dyke, supra.*

The Court of Appeals has now confirmed the breadth of FAPA's remedial purpose. In *Van Dyke*, the Court explained: "In light of the Legislature's determination that these 'abuses' should be curtailed, it is rational for FAPA to apply retroactively to shield as many borrowers as possible from those practices." *Van Dyke*, 2025 NY Slip Op 06537, at 7 [emphasis added].

That guidance resolves the issue presented here. A judicial rule limiting FAPA to borrowers who moved before expiration of the appeal period would squarely contradict the Court of Appeals' directive that the statute protect "as many borrowers as possible." Such a narrow construction would arbitrarily exclude homeowners whose cases have progressed to the judgment stage but whose properties have not yet been sold-precisely the class of borrowers the Legislature sought to protect. Indeed, such a reading would not merely fail to advance FAPA's remedial purpose; it would undermine it. If the statute applies to actions "in which a final judgment of foreclosure and sale has not been enforced," then limiting relief to borrowers who happen to file motions before their appeal periods expire would create a judicially invented exception that appears nowhere in the statute or its legislative history and is incompatible with the Court of Appeals' instruction in *Van Dyke* that FAPA's protections extend as broadly as possible.

This interpretation also accords with the statute's overall purpose. Given FAPA's plain language and the Legislature's explicit intent to abrogate the rule adopted in *Engel*, the borrowers' position - that FAPA applies where, as here, the home has not been sold at a foreclosure auction- "better comports with the statute's overall purpose and the policy behind its enactment." *Matter of Scanlan v Buffalo Pub. School Sys.*, 90 NY2d 662,676 [1997].

Accordingly, both the remedial nature of FAPA and the Court of Appeals' guidance in *Van Dyke* compel the conclusion that the statute applies here. The expiration of the appeal period is irrelevant under FAPA's framework.

## V.     Other Court of Appeals Decisions Applied New Legislation to Unenforced Post-Appealable Judgments.

The Court of Appeals has long held and applied new legislation to unenforced though post-appealable judgments. Indeed, such retroactive relief is not unusual where a judgment affecting real property has not yet been executed. Below are several.

In *Whitmarsh v Farnell*. 298 NY 336 [1949]["*Whitmarsh*"], the Court of Appeals held that newly enacted housing legislation applied even after entry of a final judgment because the judgment had not yet been executed. Similarly, in *Tegreh Realty Corp. v Joyce*, 88 AD2d 820 [1st Dept 1982]["*Tegreh*"], newly enacted rent-control legislation applied where a judgment of possession had been entered but not yet executed citing *Whitmarsh* where the "Court of Appeals stated that the then recent rent control law was applicable to all pending and future eviction proceedings even though the final orders of eviction had been entered prior to passage of the new law.": see also; *Gordon & Gordon v Madavin*, 108 Misc 2d 349, 351-352 [App Term 1st Dept 1981]; *Article 13, supra.* ["Thus, for all foreclosure actions as to which a final foreclosure sale had not been enforced prior to its effective date, including actions pending at the time of its effective date, FAPA unequivocally applies."]

10

Other decisions of the Court of Appeals reinforce this principle. In *Matter of Meegan S. v Donald T.*, 64 NY2d 751 [1984]["*Meegan*"], the Court held that a prior judgment dismissing an action on statute-of-limitations grounds did not preclude a subsequent action based on an intervening legislative clarification of the statute of limitations. *Id.* at 752. Likewise, in *Matter of World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 30 NY3d 377, 394-400 [2017]["*World Trade*"], the Court recognized that legislative enactments may affect even non-appealable judgments. These authorities confirm that retroactive legislation may alter the legal consequences of prior judgments where the Legislature has so directed.

These authorities confirm a settled principle: where a judgment affecting real property remains unexecuted, the Legislature may retroactively provide a procedural mechanism to prevent its enforcement. FAPA §10 operates in precisely this manner. Like CPLR 5015, CPLR 2221 and the legislation at issue in *Whitmarsh, Tegreh, Meegan and World Trade*, FAPA §10 provides a legislatively prescribed mechanism for relief from a judgment, even where the time to appeal has expired. Indeed, the Legislature's authority to enact such laws is plenary, "limited only by the Federal and State Constitutions." *Stefanik v Hochul*, 43 NY3d 49, 58 [2024].

This is fully consistent with the Court of Appeals' reasoning in *Matter of Hodes v. Axelrod*, 70 NY2d 364 [1987]["*Hodes*"]. As *Hodes* recognized, the so-called "vested rights doctrine" is "conclusory, and indeed a fiction" that often obscures the broader considerations of fairness, reliance, and the public interest that govern retroactivity analysis. *Id.* at 370. The Court rejected any rigid rule prohibiting retroactive application of legislation merely because a judgment has been entered, emphasizing that the relevant inquiry is whether the statute bears a rational relationship to a legitimate governmental purpose. *Id.* at 372. See *Campbell v. Holt*, 115 U.S. 620, 628-629 [1885]["It is to be observed that the word vested right is nowhere used in the Constitution, neither in the original instrument nor in any of the amendments to it."]. Applying FAPA §10 to unenforced foreclosure judgments therefore fits squarely within the type of rational, public-regarding legislative correction that *Hodes* upheld.

Accordingly, this Court cannot manufacture a limitation the Legislature intentionally omitted. Where a statute specifies the circumstances under which it applies, "an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted or excluded." *Matter of Raynor v Landmark Chrysler*, 18 NY3d 48, 56 [2011]. To impose an appeal-deadline limitation on FAPA would therefore constitute impermissible judicial legislation.

## VI. The Separation of Powers Does Not Permit This Court To Alter FAPA's Retroactivity Clause.

The institutional consensus is unmistakable. A majority of legislators enacted FAPA with an express retroactivity clause keyed to whether a foreclosure judgment has been enforced. The Governor approved that enactment. The Court of Appeals has interpreted the statute's retroactive reach. And the Appellate Division-across multiple departments - has applied that guidance in *Lin, Goldwasser*, and *Samuels*. In these circumstances, the role of this Court is not to refine or supplement the statute, but simply to apply it.

To amend FAPA by judicial fiat—to insert a timeliness bar or waiver limitation that the Legislature clearly did not enact—would transform the judiciary from an interpreter of law into an

11

auxiliary legislature. Such a ruling would be more dangerous and go beyond even *Lochner*-style judicial overreach. It would constitute a silent redrafting of legislation enacted by both coordinate branches. New York's constitutional structure does not tolerate such judicial intervention. As the Court of Appeals has admonished "courts are not to legislate under the guise of interpretation". *People v. Finnegan*, 85 NY2d 53, 58 [1995]. Courts may not alter the operation of statutes based on our view of what might be preferable policy.

FAPA says what it says. The Court must-and therefore will-apply it as written.

To graft onto FAPA an unwritten appeal - deadline limitation would substitute judicial preference for the policy choice made by the Legislature and approved by the Executive. That result would contravene the constitutional separation of powers, which reserves policymaking to the Legislature. See *Jones v Beame*. 45 NY2d 402, 406 [1978]. As the Court of Appeals long ago explained, when the Legislature has clearly expressed a new public policy through statutory enactment, earlier judicial decisions reflecting a different policy must yield. *F.A. Straus & Co. v Can. Pac. R. Co.*, 254 NY 407, 413-14 [1930]. Courts therefore may not alter that legislative policy choice by adding restrictions the Legislature did not adopt. See *Kimmel*, 29 NY3d at 401; *Matter of Orens v Novello*, 99 NY2d 180, 190 [2002].

The risks of judicial overreach are well understood in constitutional history. Plaintiff's invitation - that this Court "correct" FAPA by engrafting a judicial timeliness limitation onto its text - would require the Court to do more than interpret the statute; it would require the Court to alter it. New York courts have long rejected such an approach. As the Court of Appeals has explained, the judicial function is to give effect to the words chosen by the Legislature. not to substitute the court's judgment for that of the Legislature regarding the wisdom of its policy choices. *Matter of Orens v Novello*, 99 NY2d 180, 185 [2002]. The *Lochner* era is often cited as a cautionary example of courts intruding upon legislative policymaking by invalidating statutes based on disagreement with legislative policy judgments-an approach the Court of Appeals has observed "has long been rejected on the ground that it would stymie the legislature's exercise of the police power to provide for the common good." *Brightonian Nursing Home v Daines*, 21 NY3d 570, 576 [2013].

The principle that emerged from that history is straightforward: courts interpret statutes; they do not rewrite them. As the Court of Appeals has repeatedly emphasized, courts may not "engraft limitations onto the plain language of the statute" or enlarge statutory text under the guise of interpretation. *Kimmel v State*, 29 NY3d 386, 401 [2017]; see also *Matter of Orens v Novello*, 99 NY2d at 190. Where the Legislature has spoken clearly, the court's role is to apply the statute as written.

## VII.   The Law of the Case, Res Judicata, Collateral Estoppel and Waiver are Inapplicable.

Contrary to Plaintiff's contention, the "law-of-the-case" doctrine does not bar renewal where, as here, there has been an intervening clarification or change in the law. As the Second Department has held, *"The law of the case doctrine does not prevent a proper motion for leave to renew."* *Spodek v Neiss*, 200 AD3d 952, 953 [2d Dept 2021]; see *Strujan v Glencord Bldg. Corp.*, 137 AD3d 1252, 1253 [2d Dept 2016]["The 'law of the case' operates to foreclose re-examination of the question absent a showing of subsequent evidence or change of law"]; see also *US Bank NA.*

12

[* 12]

*v Moss*, 186 AD3d 1753, 1753-54 [2d Dept 2020)] [law-of-the-case did not warrant denial where a change in the law occurred after the prior order]. The Second Department has repeatedly held that FAPA constitutes change/clarification in the law to support a motion to renew. *See US Bank NA. v Livoti*, __AD3d__, 2025 NY Slip Op 06212 [2d Dept Nov. 12, 2025]; *Deutsche Bank Natl. Tr. Co. v Nelson*, 242 AD3d 702 [2d Dept 2025]. "A clarification of the decisional law is a sufficient change in the law to support renewal". *McLaughlin v Snowlift, Inc.*, 214AD3d 720, 721 [2d Dept 2023]. *Lin, Goldwasser and Samuels* - matters of first impression at the Appellate Division - had not been decided when Defendants first moved to renew under FAPA here. Nor had the Court of Appeals decided *Van Dyke* and *Article 13* at that time. Hence, these clarifications of the law support Defendants' motion to renew.

Nor do the doctrines of res judicata and collateral estoppel preclude renewal here. Both doctrines require that a claim (res judicata) or issue (collateral estoppel) be finally determined in a prior action to bar litigation thereof in a subsequent action. *See Parker v Blauvelt Volunteer Fire Co., Inc.*, 93 NY2d 343, 347 [1999]; *Ryan v New York Tel. Co.*, 62 NY2d 494, 500 [1984]. Neither collateral estoppel nor res judicata apply to prior findings *in the same action. See Wisell v Indo-Med Commodities, Inc.*, 74 AD3d 1059, 1060 [2d Dept 2010].

Plaintiff also contends that defendants' failure to perfect his pre-FAPA appeal from the granting of summary judgment prior to FAPA's enactment bars them from now seeking relief under FAPA. This argument is yet another attempt at imposing a judicial limitation against legislative will.

As noted at length above, much like the legislature, the Court of Appeals has been extremely clear that: "In light of the Legislature's determination that these 'abuses' should be curtailed, it is rational for FAPA to apply retroactively to **shield as many borrowers as possible** from those practices." *Van Dyke* at 7 [emphasis added]. Defendants' pre-FAPA conduct or inaction does not disqualify them from invoking FAPA's retroactive protections. To adopt plaintiff's position would frustrate the statute's remedial purpose, contradict controlling case law, and improperly impose judicial limitations that the Legislature did not enact.

In any case, the notion that a borrower waived application of FAPA, before its enactment, either through default, failure to perfect an appeal or otherwise, is not merely unpersuasive; it is fundamentally misguided. The Court in *Samuels* rejected such a notion (see footnote 2), and a party cannot waive a right that did not exist. Much like preclusion principals that are "grounded on the premise that once a person has been afforded a full and fair opportunity to litigate a particular issue, that person may not be permitted to do so again." *Gramatan Home Inv'rs Corp. v Lopez*, 46 NY2d 481, 485 [1979]

"A waiver is the voluntary abandonment or relinquishment of a known right…Accordingly, the defendants could not have voluntarily abandoned or relinquished a right that did not exist at the time." *CIT Group/Consumer Fin., Inc. v Kaiser*, 206 AD3d 791, 793 [2d Dept 2022]. Like preclusion principals, must yield to new or clarifying law. See *Matter of Meegan S. v Donald T.*, 64 NY2d 751, 752 [1984][ "The earlier decision may be a conclusive adjudication of the petitioner's rights, existing then; it cannot be an adjudication of rights thereafter conferred by law…"]

13

[* 13]

At the time summary judgment was granted and at the time the appeal was required to be perfected, any argument that the action was time-barred based on a prior acceleration would have been deemed foreclosed-indeed, frivolous-under the then-prevailing interpretation of the law shaped by *Engel* and its progeny. It would be perverse to now fault defendants for declining to assert an argument that courts would have rejected as legally untenable at that time. Our jurisprudence does not require litigants to perform futile acts or to advance claims that would have been summarily dismissed under binding precedent. Remedial statutes "are designed *to correct imperfections in prior law,* by generally *giving relief* to the aggrieved party". *Nelson v HSBC Bank, USA,* 87 AD3d 995,998 [2d Dept 2011] [emphasis added]. A statutory construction which leads to the absurd result of penalizing borrowers for not raising a frivolous argument is prohibited. *See Matter of Marian T.* 36 NY3d 44, 61 [2020].

Precluding defendants from invoking FAPA because they failed to mount a doomed pre-FAPA legal argument would invert this principle. Instead of "giving relief to an aggrieved party," it would entrench the very "imperfections" in prior foreclosure law that the Legislature sought to correct. See *Asman* v. *Ambach,* 64 NY2d 989 [1985] ["Remedial legislation is designed to correct imperfections in the prior law, by giving relief to an aggrieved party"].

In enacting FAPA, the Legislature clearly indicated that no house should be lost to a practice - the unilateral manipulation of the statute of limitations - found to be an "abuse", such as sending a "de- acceleration" letter on the eve of the expiration of the statute of limitations.

To hold otherwise would impose a retrospective penalty on defendants for not having predicted the Legislature's subsequent repudiation of *Engel* and the judiciary's embrace of FAPA's protections. Such proposed rule that would effectively reward the very procedural "abuses" that the Legislature sought to eliminate and punish the very homeowners the statute is designed to protect. This Court cannot accept that outcome and any such interpretation must yield to the legislative goal. See *In re Marino* S., 100 NY2d 361, 371 [2003]["Most importantly, the reach of the statute ultimately becomes a matter of judgment made upon review of the legislative goal."]

Indeed, it is easy to envision numerous theoretical limitations to FAPA's application: for instance, a borrower may have failed to oppose the pre-FAPA motion summary judgment, or pre-FAPA judgment of foreclosure and sale, or may have failed pre-FAPA to raise a defense clarified under FAPA in opposition to those motions. But this (or any) Court's ability to invent limitations, when it comes to interpreting statutes, is not only beside the point, but also impermissibly intrudes upon the legislative sphere. If one trial judge inserts a limitation into a statute that the Legislature did not enact, the next court may add a preservation requirement, and the next an equity requirement and the following a diligence showing, until the legislative will is nullified by accretion - with no limiting principle to arrest the slide - the judiciary ceases to interpret the law and instead mutates into a surrogate legislature.[4]

---

[4] See e.g. *Deutsche Bank Natl. Trust Co. v Hulse,* 246 NYS3d 899 [Sup Ct, Suffolk County 2025]. This Court is not so empowered. Notwithstanding this Court is bound by the Court of Appeals, this Court affirmatively believes, that FAPA was intended to "shield as many borrowers as possible" from the practices the Legislature identified as abuses. *Article 13, supra.* Regardless, the Second Department in *Samuels* applied FAPA as written even where the Court rejected the plaintiff's proffered waiver argument and is thus controlling.

[* 14]

For this fundamental reason, this Court must, and thus will, heed *Tucker's* admonition that "statute unequivocally describes in general terms the particular situation in which it is to apply, and nothing indicates a contrary legislative intent, the courts should not impose limitations on the clear statutory language". *Id* at 278. Rather, the singular question a court must ask when interpreting FAPA §10 is "has the judgment of foreclosure and sale been 'enforced'"? If it has not, the result is clear, based upon the plain language utilized by the Legislature: FAPA applies to *all* such actions.

A Legislature that did not hesitate to override the Court of Appeals' prior holdings, displace res judicata, collateral estoppel and law of the case, and reach past the expiration of the appeal period cannot rationally be understood to have stopped arbitrarily at waiver or default. The Legislature need not anticipate and address every conceivable procedural objection for its directive to control. The legislature did not hide their intentions. A review of the legislative history reveals the legislature's frustration and leaves no doubt as to how broadly it was intended to apply. I.e. as broadly as possible. See *Article 13*, *supra*.

Rather, the Legislature declared-unambiguously-that FAPA "applies to *all actions*...in which a final judgment of foreclosure and sale has not been *enforced.*" FAPA §10 [emphasis added]. Where the Legislature speaks in such sweeping, unconditional terms, courts may not rewrite the statute by judicial fiat to require a preservation showing the Legislature declined to require.

## VIII.   Alternatively, Defendants are Entitled to Reargument

Even assuming for the sake of argument only that *Lin, Goldwasser* and *Samuels* (and *Van Dyke* and *Article 13)* are not clarifications of law for purposes of a motion to renew, then Defendants are nevertheless entitled to reargument, and upon reargument, the prior motion to renew should be granted[5]. In denying the prior motion to renew, brought in 2023 following the passage of FAPA, as untimely given the expiration of the time to appeal from the judgment, the Court misapprehended. *Huie, supra*. While *Huie* states that a motion to renew is generally untimely if made after the time to appeal from the judgment has expired, *Huie* also instructs that the Legislature is free to override this judge-made rule concerning the timing of renewal motions. *See id*. FAPA §10 as written constitutes such an express legislative override. Hence, the defendants' prior motion to renew, made prior to the *enforcement* of the judgment herein, was timely, and should have been granted.

## IX.   Application of the Foregoing Principles

Application of these principles compels the conclusion that this action is time-barred. FAPA applies retroactively to acts taken and actions commenced before its enactment. *See Van Dyke v US. Bank, NA.,* __NY3d__, 2025 NY Slip Op 06537 [Nov. 25, 2025]; *Art. 13 LLC v Ponce De Leon Fed. Bank,* __NY3d__, 2025 NY Slip Op 06536 [Nov. 25, 2025]. The commencement of the 2010 action with a complaint containing a demand for immediate payment in full accelerated the debt and triggered the six-year statute of limitations on an action to foreclose the mortgage. The limitations period therefore expired no later than January 14, 2016. *See* CPLR 213[4]. Therefore,

---

[5] Defendants have timely appealed from denying their prior motion for renewal and hence a motion for reargument is timely. *See Itzkowitz v King Kullen Grocery Co., Inc.,* 22 AD3d 636, 638 [2d Dept 2005]; *Connolly v Toys-R-Us,* 250 AD2d 721, 721 [2d Dept 1998].

15

[* 15]

defendants met their prima facie burden in demonstrating this action is untimely. Under FAPA's clarifications to CPLR 203[h], the purported 2015 "deacceleration notice" did not reset the statute of limitations. *See MTGLQ Inv'rs, L.P. v Rodgers,* 239 AD3d 968, 970 [2d Dept 2025]; *Citimortgage, Inc. v Gunn,* 234 AD3d 922, 924 [2d Dept 2025]. Accordingly, the instant action, commenced more than six years after the acceleration of the debt via the commencement of the 2010 action, is barred by the statute of limitations. *See id;* CPLR 213[4]. The complaint shall be dismissed, and the notice of pendency shall be cancelled. *See* CPLR 6514[a]; *Bayview Loan Servicing, LLC v Starr-Klein,* 193 AD3d 807 [2d Dept 2021].

Defendants also sought judgment on their counterclaim to discharge the mortgage as time-barred pursuant to RPAPL 1501[4]. "Pursuant to RPAPL 1501(4), a person having an estate or interest in real property subject to a mortgage may maintain an action to secure the cancellation and discharge of the encumbrance, and to adjudge the estate or interest free of it, if the applicable statute of limitations for commencing a foreclosure action has expired". *Tomala v Caliber Home Loans, Inc.,* 243 AD3d 612, 613 [2d Dept 2025]. Because an action to foreclose the mortgage is barred by the statute of limitations for the reasons discussed above, it follows that Defendants are entitled to judgment on their counterclaim to cancel and discharge the mortgage of record. *See Tomala, supra.*

## X. Conclusion

The question before this Court is whether FAPA §10 applies to this action, where a judgment of foreclosure and sale has been entered, the time to appeal expired, but was never enforced through a judicial sale. For the reasons set forth above, every authoritative source of law answers that question in the affirmative. A judgment of foreclosure and sale is not "enforced" within the meaning of FAPA §10 until the judicial sale is held. CPLR 2221[e] imposes no statutory time limit on motions to renew, and FAPA §10 creates an express legislative exception to any judicially crafted timeliness rule—a conclusion the Appellate Division has reached with unanimity. The statutory text forecloses any judicially created appeal-deadline limitation; the legislative history confirms the Legislature's intent to reach all unenforced foreclosure judgments without exception; and FAPA's status as remedial legislation requires liberal construction to accomplish its protective purpose. The Court of Appeals has consistently applied new legislation to pending matters and unenforced judgments, even after the expiration of the appeal period. The separation of powers prohibits this Court from engrafting a limitation onto FAPA that the Legislature chose not to enact. And neither the law of the case, res judicata, collateral estoppel, nor waiver bars this result. On an alternative and independent basis, this Court grants renewal in the interest of justice.

The unifying principle that runs through each of these holdings is straightforward: the Legislature's will governs. Every argument plaintiff advances—that finality bars retroactive relief, that the appeal period forecloses renewal, that defendants' pre-FAPA conduct amounts to waiver—presupposes that a court may override the Legislature's unambiguous directive by inventing limitations the statute does not contain. But "the reach of the statute ultimately becomes a matter of judgment made upon review of the legislative goal" *Matter of Marino S.,* 100 NY2d 361, 370 [2003]. The legislative goal of FAPA is to "shield as many borrowers as possible" from the consequences of abusive foreclosure practices. Any interpretation that yields an outcome incompatible with that goal must fail. To hold otherwise—to permit one trial judge to insert a limitation the Legislature did not enact, and another to add yet another—would mean that the

16

judiciary ceases to interpret the law and instead becomes a surrogate legislature, nullifying the legislative will by accretion. This Court declines that path and heeds the admonition that courts "should not impose limitations on the clear statutory language."

Because the judgment of foreclosure and sale in this action has not been enforced, FAPA applies. Because FAPA applies, the purported de-acceleration notice did not reset the statute of limitations, and this action—commenced more than six years after the acceleration of the debt—is time-barred. The complaint must be dismissed and the mortgage discharged.

Lastly, the granting of Defendants' cross-motion compels the denial of plaintiffs motion to extend the time to conduct the foreclosure sale as moot and the notices of pendency filed herein must also be cancelled. See CPLR 6514; See also generally, *Nationstar Mtge., LLC v Davis*, 240 AD3d 790 [2d Dept 2025]; *Bayview Loan Servicing, LLC v Starr-Klein*, 193 AD3d 807 [2d Dept 2021]

Accordingly, it is hereby

**ORDERED,** that Defendants' cross-motion (Mot. Seq. 7) is granted in its entirety, and the action be and hereby is dismissed as barred by the statute of limitations; and it is further

**ORDERED,** that the Notice of Pendency [NYSCEF Doc. 146] be and hereby is cancelled, and the Clerk of the Court shall note the cancellation of the same on the margin of its records; and it is further

**ORDERED,** that Plaintiffs motion (Mot. Seq. 6) for an extension of time to conduct the foreclosure sale is denied in all respects; and it is further

**ORDERED, ADJUDGED AND DECREED** pursuant to RPAPL 1501[1] and RPAPL 1501[4] that Plaintiff and every person claiming under it be forever barred from all claim to an estate or interest in the premises located at 2612 Avenue J, Brooklyn, New York 11210, Block No. 7608, Lot No. 43, Kings County (the "Premises"); and it is further

**ORDERED, ADJUDGED AND DECREED,** that the consolidated mortgage recorded on July 16, 2008 at CRFN 2008000282589, and the first mortgage recorded on February 14, 2005 at CRFN 2005000091798 and the second mortgage recorded on July 16, 2008 at CRFN 2008000282588 (which first and second mortgage were consolidated into a single lien by the consolidated mortgage) are hereby cancelled and discharged of record; and it is further

**ORDERED,** that the Office of the City Register is directed to accept and record a certified copy of this Judgment and to mark the land records accordingly.

This constitutes the decision, order and judgment of the Court.

ENTER:

*[signature]*

Hon. Menachem M. Mirocznik, JSC

17

[* 17]